## LORING v. KANSAS CITY, FORT SCOTT & MEMPHIS RAILROAD COMPANY, *Appellant*.

### Division Two, May 21, 1895.

128  349<br>
82a 143<br>
128  349<br>
e175 ³318<br>
128  349<br>
e178 ¹515

1. **Railroad**: SWITCH YARD: INJURY TO SERVANT: CONTRIBUTORY NEGLIGENCE. Servants of a railroad company operating a switch engine in its yards are not required to anticipate that an experienced section hand, familiar with the work of the engine and knowing the risk of crossing the track in front of moving cars, will heedlessly step on the track in front of such engine without even looking for it.

2. ——: ——: ——. The fact that the engine was being run at a rate of speed of twelve miles an hour did not render the company guilty of negligence, there being no ordinance prohibiting such speed and no highways to be crossed and it appearing that the deceased was familiar with the movements of the engine.

3. ——: ——: ——: CONTRIBUTORY NEGLIGENCE. Where the servants of the company in charge of the engine are not bound to anticipate persons on the track, and the injured person's own negligence placed him in peril, there can be no recovery, unless those in charge of the engine could have prevented the injury *after* actually discovering the peril.

4. ———: ———: ———.  Evidence examined and *held* that a section hand killed while at work on defendant's railway track was guilty of contributory negligence precluding a recovery by his widow for his death.

*Appeal from Texas Circuit Court.*—Hon. C. C. Bland, Judge.

Reversed.

*Wallace Pratt, I. P. Dana* and *Olden & Orr* for appellant.

(1)   There was a total failure of evidence to prove the case pleaded in the petition.  *Waldheir v. Railroad,* 71 Mo. 514; *Price v. Railroad,* 72 Mo. 414; *Jackson v. Hardin,* 83 Mo. 175; *Harty v. Railroad,* 95 Mo. 368. (2)   There was no evidence of negligence on the part of the defendant which placed deceased in peril.  No rate of speed is negligence *per se,* in the absence of a statute or ordinance regulating the rate of speed.  *Maher v. Railroad,* 64 Mo. 267; *Wallace v. Railroad,* 74 Mo. 594.   (3) The peril and death of deceased were due to his own negligence.   (4)   There was no evidence that defendant's engineer knew of the peril of deceased or that, if he had known it, he could have prevented the cars running over him.   (5)   The engineer and other trainmen were, under the facts of the case, fellow servants of the deceased and defendant would not be liable for their negligence, even if the record disclosed any.

*Livingston & Green* for respondent.

(1)   Even if there was any negligence on the part of the deceased, it was a question for the jury and it was properly submitted to that tribunal.  *Wilkins v. Railroad,* 101 Mo. 93; *Webber v. Railroad,* 100 Mo. 94; *Church v. Railroad,* 119 Mo. 203; *Dixon v. Railroad,*

109 Mo. 413; *Petty v. Railroad*, 88 Mo. 306; *O'Hara v. Railroad*, 95 Mo. 662; *Stephens v. Railroad*, 96 Mo. 213. (2) Defendant's cases state the rule as to trespassers and strangers and not as to employees. See *Gessley v. Railroad*, 32 Mo. App. 413; 1 Thompson on Negligence, p. 461, sec. 3. (3) If the engineer (as the evidence tends to show) saw or by reasonable diligence could have seen Loring's perilous position in time to save his life, the railroad company is liable, even though deceased might have been a stranger or trespasser. *Williams v. Railroad*, 96 Mo. 275; *Erwin v. Railroad*, 96 Mo. 290; *Hilz v. Railroad*, 101 Mo. 36; *Hanlon v. Railroad*, 104 Mo. 381; *Lynch v. Railroad*, 111 Mo. 601; *Guenther v. Railroad*, 108 Mo. 18.

GANTT, P. J.—This is an action for damages, brought by the widow of Frank Loring who was killed by a train of cars in defendant's yards at Willow Springs, on the seventh day of November, 1891.

Frank Loring was a section hand working for defendant in its said yards, and the petition alleges that he was killed by and through the carelessness, recklessness and criminal negligence of defendant's agents, servants and employees in the manner and by the means following, that is to say:

"That said Frank Loring, husband of plaintiff as aforesaid at the time aforesaid, was working as a section hand for defendant and the Current River Railroad Company, in and on their switch yard at said city of Willow Springs; that while so working on one of the tracks in said yard, the agents, servants and employees of defendant, suddenly and without warning or signals, started and set in rapid motion an engine with three box cars in front of it, and ran said engine and cars at a rapid and fast speed on said track where said Loring was at work, that there were no brakemen or

other parties on said box cars to give signals or control the motion thereof; that the engineer in charge of such engine and cars could easily have seen said Loring, but was looking in an opposite direction; that while such train was moving and being run as aforesaid, the said Loring was struck and caught by the box car in front, and was dragged and carried a long distance, and then run over and killed; that while being so dragged and carried by such cars, the said engineer in charge of said train was often signaled and warned of the perilous position of said Loring by many persons near by, but gave no heed or attention thereto and continued the rapid motion of such train until said Loring was run over and killed; that by and through the criminal carelessness, recklessness and negligence of the servants and employees of defendant as aforesaid, the said Frank Loring was run over and killed."

The answer admits the incorporation of defendant; the employment of deceased, but denies that his death was caused by defendant's negligence, and then avers that his death was caused by his own contributory negligence in stepping on a track immediately in front of a moving train and so close thereto that it could not be stopped in time to prevent the injury to him; and *third,* that if the engineer was in any manner negligent in handling said cars, and if his carelessness contributed to the death of said Loring, or if the death of said Frank Loring was caused by any of his own acts of contributory negligence, or by the concurring negligence of said engineer and said Frank Loring, while the engineer was doing switch work on said tracks and while said Frank Loring was working as a section hand on said switch tracks on said yard, then the said engineer and said Frank Loring were in law fellow servants, and this defendant is not liable for the injury and death of

said Loring caused by the negligent acts of a fellow servant.

The following facts were developed on the trial: At Willow Springs, the Current River Railroad has its western terminus and maintains union switching yards in connecting with the Kansas City, Fort Scott & Memphis Railroad. There are at least five or six distinct tracks in these yards, perhaps more, and many trainmen and employees of the two systems, which are operated conjointly, work in these yards, making up and sending out trains. Frank Loring was working under foreman Robert Manos, whose section included these yards and tracks, and had been so engaged for four to six months, or longer, working regularly on these tracks and switches, prior to his death. The engine and crew, consisting of conductor, engineer, fireman and two brakemen, which did the switching in these yards came down every morning from Springfield about 7:45 and remained during the day and returned to Springfield at night.

On the morning of the accident the section gang, under their foreman, Manos, were working on a split switch just east of the depot and had been so engaged for an hour and a half, when the switch engine had occasion to use this switch which had been spiked by the section men in repairing it; thereupon Manos and his men, among whom were Murray and the deceased Loring, removed the spikes and the engine moved over into a different portion of the yards, took three box cars and again passed over the same track, and returned, this time pushing the cars in front of it over a track known by them as the "coach" or "scale" track, lying near the one on which the men had been working but some eight feet from it.

While this switching was going on and before the cars passed the last time, Loring asked Manos if he had

not better go for some water, and the foreman Manos told Loring and Murray they could go, for they could not do anything till the train got through switching. Thereupon Murray and Loring started off in a north-easterly direction across the other tracks and Manos went on with some part of the work.    While the location of the different men was not marked on the tracing offered in evidence at the trial, it is evident from the testimony that Manos was near the switch where his work was, and on what is called the Current River main line—Jones being at work on the same track and about thirty feet east of Manos—Loring and Murray walking notheasterly and about to cross the "scale" or "coach" track, the next one to that on which Manos and Jones were, and *about eight feet north of it*, and the cars pushed by the engine were approaching from the west on the scale track and were near by.

Such being the situation, what took place is described by them as follows: Manos says: "I happened to look up and the cars were nearly against the boys—they did not seem to be noticing the train—then I hallooed at them, and just as I spoke to them the last time the car struck them and knocked Frank Loring down in the center of the track and knocked Murray off one side." Loring was run over and so injured that he died soon after.

Murray, who was with Loring, says:    "Me and Loring had started after some water and was going down through the yards; Loring had stepped inside one of the tracks there and I was stepping in after him; I had my left foot over the rail.    About that time I heard Manos halloo 'Look out, Bill and Frank!'    I looked back and the car struck me in the left side and knocked me off to one side—off the track.    It knocked Loring down and ran over him."

Brakeman McEwen says:    "I was on the end of

the car furthest from the engine—the car that struck Loring.  I was climbing up the side of the car when I saw Loring and another man start across the track right in front of the cars, about eight or ten feet from the car.  They had started from where they were at work on the main Current River track to cross the 'scale' or 'coach' track and only had to go about five or six feet from one track to the other.  When I saw they were going to step on the track in front of the car I 'hollered' to them to keep out of the way, but they did not stop and went on the track just in front of the car."  Both were struck—Loring being run over and killed.

Jones, another section hand, says he was about thirty feet east of Manos; that he heard someone shout and looked up and saw Loring stepping upon the track and the cars close behind him.

There was nothing to obstruct the view of the approaching cars, and all the witnesses agree that neither Loring nor Murray looked for the cars, or for trains, or for anything else before stepping on the scale track, on their way to get water, but started across "angling" wise, with their backs or shoulders turned toward the approaching cars, and stepped directly in front of them.  As Murray says: "I did not see the cars till Manos told me to look out; I had then been on the track *just long enough for the car to knock me off; I had just stepped on.  Neither Loring nor I looked toward the cars; we were both looking the way we were going; we had barely time to step on the track when we were struck."* Nor is there any doubt but that, had they looked, they could have seen the approaching cars.  The witnesses all agree that there was absolutely nothing to prevent seeing them.

The section men expected the cars would pass there again, and for that very reason postponed their work until the switching should be ended, and Loring was

told so. When the cars passed twice before, they, including Loring, had moved out of the way without waiting to be warned, and on their approach this time Manos heard and saw them where he was at work, although not on the same track (the tracks were close together), and got up and moved away. There was a curve in the track, and the engine, about the time the time the cars struck Loring, was at the point of the curve; this placed the engineer so that he could not see the forward car or the track immediately in front of it from his cab window. As plaintiff's witness, Jones, expressed it, the engineer could not see Loring or Murray when on that track "unless he could see through a box car."

As to the foregoing facts there is no conflict, either real or apparent, in the testimony. There is some dispute as to whether the engine bell was rung as the cars moved, and as to their speed. The section men said the bell was not rung. The engineer said the bell was ringing. As to the speed of the cars, section foreman Manos placed it at from twelve to fifteen miles per hour, and Jones at about twelve miles an hour. The trainmen fix the rate as follows: McEwen, eight to ten miles; Hazel, six miles, just after Loring was struck; Carson, "about eight miles," and Helman, the engineer, "not to exceed eight miles." Other facts may be noted in the further discussion of the case.

I. Upon the facts stated no negligence was shown on the part of defendant's employees doing the switching when Loring was struck by the cars and knocked down. They were moving cars backward and forward in the work yards of their employer. There were no highways to be crossed and no ordinance of the city was being violated by running their engine at even twelve miles an hour. The charge that they started suddenly without blowing the whistle or ringing the bell was

wholly unsupported by the evidence.   On the contrary their engine and its crew had been at work for at least an hour in the immediate view of Loring and the other section men.   It had passed them twice only a few minutes before Loring was struck and they had all got out of its way without any signals being given.   Loring's duty as a section man required him to look out for this switch engine, which his daily experience and common observation had taught him was kept constantly moving in the yards.   He was not placed in a dangerous position in which he could not look out for himself; he was not engrossed in his work, nor was he ignorant of the moving of the train.  Neither the failure to signal nor the speed of the train was the proximate or natural cause of his injury.   The engineer and brakemen most certainly were not required to anticipate that two experienced section men, who were familiar with the work of the switch engine and the danger of crossing in front of moving cars, would heedlessly step on the track immediately in front of the train without even looking for it.   *Yancey v. Railroad,* 93 Mo. 433; *Boyd v. Railroad,* 105 Mo. 371.

It must be borne in mind that the section men were working on a different track from that on which plaintiff's husband was killed.   So long as the section men remained at their work, they were in no danger whatever from the switch engine; it mattered not how fast it was running, though there was no evidence it was moving at an unusual rate of speed.   But when Murray and Loring started after water they only had to go eight feet to get on the track in front of the engine and the uncontradicted fact that they were struck the very instant they stepped on the track demonstrates how short a notice the brakemen or engineer could have had of their intention to go on the track, had they been looking at them when they first

started, and the physical fact fully corroborates the evidence of the brakeman Carson, who testified that seeing them move in the direction of the track he signaled to slow up and then instantly signaled to stop when he saw they had heedlessly gone on the track in front of the train. The charge that there were no brakemen on the train, is out of the question. Although Manos says he did not see any brakemen, the testimony is overwhelming that they were there, and the train was stopped by their signals. Carson, one of the brakemen, went after the physician and met Manos on his return with the doctor, as Manos himself says.

But, even if there had been no brakeman on the end of the car, this would not have constituted negligence under the circumstances. There was nothing to show that defendant owed Loring any such duty. The engine was attached to the cars and they were under the control of the engineer and the case is clearly distinguishable from those cases in which this court has held it was negligent to send a car detached from the engine across a street without a brakeman in charge of it, and those cases in which a city ordinance required a brakeman to ride on the car farthest from the engine, when backing through a city, to warn pedestrians and travelers from the highway.

But we base our judgment of reversal upon the further ground that the plaintiff's husband's death was caused by his own negligence. This court has again and again held that it is the duty of a traveler upon a highway, in approaching a railroad crossing, to look and listen for trains before going upon the track; in other words, even upon highways where the citizen has a perfect right to be, he is required to use all reasonable precautions to ascertain the approach of trains. He is required to look carefully in both directions at a convenient distance from the crossing before

venturing upon it. He can not close his eyes and thereby relieve himself from his neglect. *Kelsay v. Railroad*, 30 S. W. Rep. 339; *Hayden v. Railroad*, 124 Mo. 566. And if the traveler neglect to use this precaution, he is denied a recovery, notwithstanding the railroad company may have neglected to give the statutory signals by ringing the bell or sounding the whistle. *Fletcher v. Railroad*, 64 Mo. 484; *Zimmerman v. Railroad*, 71 Mo. 476; *Purl v. Railroad*, 72 Mo. 168; *Turner v. Railroad*, 74 Mo. 602.

Loring was not a trespasser in the yards, but this in nowise absolved him from the duty of looking for a train before stepping upon the track. If the law exacts of a traveler upon a highway the duty of looking and listening, *a fortiori* it demands of an employee, familiar with the usages and dangers of a switch yard, that he look before he steps upon a track upon which his daily experience teaches him a train, or an engine, may pass at any moment. *Aerkfetz v. Humphreys*, 145 U. S. 418; *Elliott v. Railroad*, 150 U. S. 245.

It was simply impossible for Loring to have looked west for an approaching train and not have seen the cars being shoved by the switch engine. The track was wholly unobstructed; it was daylight; the cars were in plain view and close at hand, and in such a case, when he stepped upon the track and was struck by the train, he would be conclusively presumed to have disregarded his duty to look and listen, if the positive and unequivocal evidence of all the witnesses had not affirmatively established that he did not look, and his negligence precludes his right to recover. The only way this conclusion can be avoided is by showing that the engineer was negligent in not stopping the train after he knew Loring was down and under the cars.

The petition alleges that "the engineer was signaled and warned of the perilous position of Loring by

many persons, but continued his rapid motion until Loring was killed.'' It will be observed that there is no allegation that the engineer knew that Loring was under his train. The evidence discloses that various persons did scream and halloo, but that the engineer did not hear, or understand what it meant, but was looking to his conductor and brakeman for signals, and, as soon as he got them, stopped his train. It is well settled that in this character of cases, cases in which the employees in charge of the train are not bound to anticipate persons on the track, when plaintiff's own negligence places him in a position of peril, he can not recover, unless defendant might have prevented the injury after actually discovering his peril. The attempt on this part of the case was to show negligence because the engineer did not heed the signals. There is no averment that the train could have been stopped sooner than it was, after the engineer [actually knew of the danger of Loring. The deceased was not in peril until he passed out of sight of the engineer. No one, not even Manos, thought Murray and Loring were going to step on the track until the instant they did it. While Manos says he screamed to the engineer, yet the whole context of his evidence shows he was doing all he could to save Loring and could not have been in sight of the engineer after he ran to Loring; that he fell or was thrown down three times in his effort to extricate him from his dangerous position and he was thus placed where he could not possibly see what the engineer was doing, and there is nothing to show that the engineer understood the signals as meant for him, and certainly he would not be expected to neglect his duty which required him to look to the conductor and brakemen, and listen to the various noises in the yard.

We find no evidence in this record that tends to show that the engineer refused, or delayed a moment in

stopping the train after the brakeman signaled him. There were other trains at work there making much confusion and no fault is to be attributed to him that he did not heed noises from every source but kept his eye on those from whom he was bound to receive signals. No witness estimates that he ran over seventy-two feet, or about two car lengths, from the time Loring was struck. There is no evidence that he could have stopped his train going at the rate it was in less than seventy-five feet, and it is not to be inferred, without evidence, that this engineer was guilty of wantonly mangling Loring after he was down and incapable of extricating himself.

Upon the whole case our conclusion is that the evidence wholly fails to sustain the theory of the petition; that there was no evidence of negligence by those in charge of the switch engine and cars attached thereto, but that Mr. Loring came to his untimely death by reason of his thoughtlessness in stepping immediately in front of the train which killed him, and the trainmen did not discover his peril in time to save him, and as these facts appeared from the uncontradicted evidence, the trial court should have declared as a matter of law that plaintiff could not recover. The judgment is reversed. BURGESS and SHERWOOD, JJ., concur.