**DAVIDSON et al. v. GARDNER**
(two cases).

Nos. 9515, 9516.

United States Court of Appeals
Seventh Circuit.

Jan. 28, 1949.

William H. De Parcq and Robert J. Martineau, both of Chicago, Ill., and Donald T. Barbeau, of Minneapolis, Minn., for Davidson.

Douglas C. Moir and Edward J. Wendrow, both of Chicago, Ill., for Gardner.

George B. Christensen, of Chicago, (Winston. Strawn, Shaw & Black, of Chicago, Ill., of counsel), for Henry A. Gardner, Trustee of the Railroads and Properties of Alton R. Co.

Before MAJOR, Chief Judge, KERNER, Circuit Judge, and LINDLEY, District Judge.

MAJOR, Chief Judge.

This action was brought in the United States District Court for the Northern District of Illinois against the Burlington Railroad Company (hereinafter referred to as the Burlington) and Henry A. Gardner, Trustee of the Alton Railroad Company (hereinafter referred to as the Alton), to recover damages for the wrongful death of Martin M. Davidson, which occurred at Kansas City, Missouri, on November 3, 1945, while he was employed as a switchman for the Burlington. Plaintiffs are the widow, suing as administratrix and also individually, and the three minor children of the deceased. The complaint contains two counts—one against the Burlington as decedent's employer under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., and the other against the Alton under a provision of the Missouri statute which authorizes a right of action for wrongful death.

The Burlington, prior to trial, paid plaintiffs $5,000 under a covenant not to sue, and the action as to it was dismissed. The Alton (sometimes called the defendant) moved to dismiss on the ground that the District Court did not have jurisdiction under the Illinois Injuries Act, death having occurred outside the State, R.S. 1945, Chap. 70, Sec. 2. This motion was denied by Judge Barnes and the case proceeded to trial before Judge Holly and a jury. During the trial, the motion to dismiss on the jurisdictional ground was renewed, and was denied by Judge Holly.

A motion for a directed verdict was made by the Alton both at the conclusion of the plaintiffs' evidence and at the conclusion of all the evidence. In the former instance it was denied, while in the latter the court's ruling was reserved. The jury returned a verdict for plaintiffs in the sum of $10,000, the maximum allowed under Missouri law. Thereafter, defendant made separate motions for judgment notwithstanding the verdict and for a new trial, and the trial court heard, considered and decided these motions separately and entered separate orders granting defendant's motion for judgment notwithstanding the verdict and denying the motion for a new trial.

The case comes before this court upon an appeal by plaintiffs from the judgment entered for defendant notwithstanding the verdict and also upon a cross-appeal by defendant from the same judgment for the purpose of renewing the jurisdictional question raised below on defendant's motion to dismiss.

Sec. 2, Chap. 70 of the Illinois Injuries Act provides: "That no action shall be brought or prosecuted in this State to recover damages for a death occurring outside of this State where a right of action for such death exists under the laws of the the place where such death occurred and service of process in such suit may be had upon the defendant in such place."

Admittedly, a right of action existed under the laws of the State of Missouri, where decedent's death occurred, and service of process was obtainable in that jurisdiction. More than that, there is no question but that this Illinois statute presents an effective bar to the maintenance of plaintiffs' right of action in the Illinois courts.

We are thus met squarely with the issue as to whether this State provision likewise deprives a United States District Court sitting in Illinois of jurisdiction in a diver-

sity case. Judge Barnes in the court below, in overruling the motion to dismiss, relied upon the decision of this court in Stephenson v. Grand Trunk Western R. Co., 7 Cir., 110 F.2d 401, 132 A.L.R. 455, a case where the precise question was raised and decided. No good purpose could be served in reiterating the reasoning which we there employed. It is sufficient to note that the conclusion which we there reached finds abundant support in cases decided both prior and subsequent thereto.[1]

The defendant urges that the rule announced in the Stephenson case must be overruled in view of the subsequent decision of the Supreme Court in Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832. Whether this recent decision of the Supreme Court requires such a result is the problem presented. It is beyond our province, of course, to argue with the Supreme Court concerning the logic or validity of its holding in this or any other case. Our difficulty arises from the serious doubt which we entertain as to whether the Supreme Court either held or intended to hold that jurisdiction of Federal courts may be impaired or abridged by a State acting either through its legislature or its courts.

 It must be conceded, we think, that the court in the Angel case made some statements which sustain the defendant's contention. See 330 U.S. at pages 191 and 192, 67 S.Ct. at page 662, 91 L.Ed. 832. Plaintiffs here contend that the statement of the court in this respect was obiter, and in oral argument such was admitted by counsel for the defendant. In the Angel case the plaintiff prior to the commencement of his action in the Federal court had litigated the same cause of action in the State court, all the way to the Supreme Court of the State, and lost. So far as we are able to discern, the only question before the Supreme Court was whether the State court judgment was res adjudicata. The court in its opinion states 330 U.S. at page 185, 67 S.Ct. at page 659, 91 L.Ed. 832:

"We granted certiorari, 326 U.S. 713, 66 S.Ct. 231 [90 L.Ed. 421], because the failure to dismiss this action, on the ground that the judgment in the North Carolina court precluded the right thereafter to recover on the same cause of action in the federal court, presented an important question in the administration of justice."

If the judgment in the State court was res adjudicata, we would suppose that it would constitute a bar to another suit in any court, whether it be a Federal court or another court of the same or different State. We must, therefore confess our inability to comprehend how the rule of Erie v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, as it concerns jurisdiction in diversity cases, is of any consequence. In the Angel case, there were two dissenting opinions joined in by four members of the court. Each of these dissents, as we understand, rests on the basis that the majority opinion is confined to a decision on the doctrine of res adjudicata, and each of them takes issue on the decision of the majority in that respect. For instance, Mr. Justice Reed stated 330 U.S. at page 193, 67 S.Ct. at page 662, 91 L.Ed. 832: "My understanding of the Court's decision is that the doctrine of res judicata, that is a former adjudication, defeats Bullington's claim against Angel. The opinion is limited to that point. In my view the conclusion reached by the Court is erroneous."

Mr. Justice Rutledge stated 330 U.S. at page 210, 67 S.Ct. at page 671: "The Erie rule did not purport to change the law of federal jurisdiction in diversity cases, taking it out of the hands of Congress and the federal courts and putting it within the states' power to determine. It purported only to prescribe the rule federal courts should follow in applying the substantive law."

So it appears that when four members of the Supreme Court regard the decision of the majority as having decided only the issue of res adjudicata, we are at liberty to

[1] It is also of interest that the Supreme Court granted certiorari in the Stephenson case, limited to the question now presented, 310 U.S. 623, 60 S.Ct. 1101, 1102, 84 L.Ed. 1395, but that the case was settled before hearing in the Supreme Court and dismissed pursuant to stipulation. 311 U.S. 720, 60 S.Ct. 1107, 85 L.Ed. 469.

do likewise, and when so treated the statements and discussion of the court concerning the effect of State law on Federal jurisdiction is obiter and is not binding or controlling on inferior Federal courts.

The Court of Appeals of the Fifth Circuit, in Interstate Realty Co. v. Woods, 168 F.2d 701, decided in favor of Federal jurisdiction under a state of facts giving rise to the question with which we are now confronted. That court, after the decision of the Supreme Court in the Angel case, on a petition for rehearing adhered to its previous decision, 170 F.2d 694, at page 695, and as to the Supreme Court decision stated: "The Supreme Court in the Bullington [Angel] case was concerned with the application of the doctrine of res adjudicata under a North Carolina statute prohibiting a suit for recovery on a deficiency judgment. What was said in that case about cases like David Lupton's Sons Co. v. Automobile Club of America, supra [225 U.S. 489, 32 S.Ct. 711, 56 L.Ed. 1177, Ann. Cas.1914A, 699], was argumentative. We do not consider it to have overruled the David Lupton's Sons Co. case upon the question with which we are now concerned and with respect to which the David Lupton's Sons Co. case expressly dealt."

No sort of judicial legerdemain can conceal the fact that the recognition of defendant's contention will not only impair and abridge but destroy Federal jurisdiction in cases where it is applicable. This philosophy is a challenge to the universally recognized proposition that Congress alone determines and limits the jurisdiction of the courts of which it is the creator. We will not embrace a doctrine freighted with such far reaching consequences until we are required to do so by a decision of the Supreme Court in a case where the question is squarely presented and decided and, in our view, that has not been done in the Angel case. We adhere to our decision in the Stephenson case and hold that the motion to dismiss was properly denied.

Relative to the merits of the case, the court below in awarding a judgment for the defendant held there was no sufficient proof of negligence on its part and, further, that the deceased was guilty of contributory negligence. Both sides agree that these two issues must be determined by the law as announced by the Missouri courts.

The accident which resulted in Davidson's death occurred in the railroad switchyard in Kansas City, Missouri, while he was employed as a switchman for the Burlington. The yard was a busy one, with many tracks, and used by a number of railroads. The only tracks which need be mentioned are Terminal track No. 81, Frisco track No. 1 and Frisco track No. 2. These three sets of tracks extend in a north and south direction and are parallel to each other. Track No. 81 was the northbound main on which the Alton engine was backing. The Burlington engine was also backing in the same direction on track No. 1. The Burlington engine was traveling about ten or twelve miles per hour, and the Alton engine a little faster. The Alton engine caught up with the Burlington, and it was at a point when the two engines were side by side on adjacent tracks that the accident occurred. A short distance north of this point was a cross-over switch where the Burlington intended to switch over (to the east) on track No. 2.

The deceased was riding on the west or engineer's side of the tender footboard (at the north end of the engine as it backed north). The sole duty which confronted the deceased at that time was to throw the switch so as to permit the Burlington engine to move from track No. 1 to track No. 2. At the proper point, the deceased stepped off the footboard on the west side of the engine and into the space between the tracks on which the two engines were moving. The space between the two tracks was standard, which means there was room between the two tracks for a person to stand with safety while engines or trains were passing. The deceased, without looking to the south, from which direction the Alton engine was approaching, stepped backward and in a position where he was struck by the Alton engine and received the injuries which resulted in his death.

The two acts of negligence relied upon by the plaintiff are (1) that the servants on the Alton engine failed to keep a proper lookout, and (2) that the Alton failed to give decedent any notice or warning by bell,

whistle or otherwise, in violation of customs and practices in overtaking and passing an engine on an adjoining track and in violation of the written rules of the Alton and the Terminal Company.

■ The record is barren of any evidence concerning any custom or practice with reference to the giving of notice of an approaching engine under the circumstances which existed, but even if there had been proof of such custom or practice, it would be of little if any benefit to the plaintiff because of the insufficiency of the evidence to prove negligence in this respect. The lower court fairly summarized the proof in this respect as follows:

"The engineer and fireman of the Alton both testified positively that the bell was ringing. The plaintiff produced three witnesses, members of Davidson's crew, Charles B. Shackelford, switch foreman, Frank Groomes, a helper, and John Sader, fireman on the Burlington engine, who testified on this question. Shackelford testified that he didn't recall whether the bell on the Alton engine was ringing. If there was a bell ringing he never noticed it. He was not interested in the engine, never noticed it until after the accident.

"Frank Groomes testified that he couldn't state whether the bell of the Alton engine was ringing because he didn't know. He couldn't say that he heard the bell, the bell could have been ringing. If the bell or whistle had been sounded he could have heard them, but he did not recall a bell or whistle being sounded.

"John A. Sader testified that he didn't notice the Alton engine until after the accident. If the bell on the Alton was ringing he didn't hear it. 'I don't recall hearing it. As to whether or not I was in a position to hear it, you know your mind could have been so you wouldn't have heard it—so much interested on your side.' 'I didn't hear any bell or whistle.' 'I don't recall hearing any bell.' 'I don't pay any attention to whether bells are ringing all the time.' 'I just don't remember whether it was ringing or not. I have no recollection of it.'"

We agree with the lower court that this testimony was insufficient to present a jury question on the charge of defendant's failure to ring a bell. The gist of this testimony and of every witness is that the witness did not recall or remember hearing a bell. It does not even rise to the dignity of what is commonly referred to as negative testimony. The rule generally, and it appears to be no different in Missouri, is that such testimony is insufficient. Farris v. Thompson, Mo.App., 168 S.W.2d 439, 442; Little v. Manufacturers Ry. Co., Mo.App., 123 S.W.2d 220, 222; Ingram v. Mobile & Ohio R. R. Co., 326 Mo. 163, 30 S.W.2d 989, 993; Trust Co. of Chicago v. Erie R. Co., 7 Cir., 165 F.2d 806, 809.

■ Plaintiffs' argument as to defendant's negligence for failure to keep a proper lookout is based upon the failure of the fireman to perform his duty properly. Both the engineer and fireman of the Alton were in their usual positions and looking northward prior to the point of the accident. The engineer continued to do so but being on the west side of his engine his view of the opposite side of the track (the side on which deceased was struck) was obscured by the engine tender for some distance before the engine arrived at the point of the accident. The fireman at the time of the accident and some time prior thereto admittedly was not looking or watching but was engaged in trimming the fire and cleaning up the engine preparatory to finishing his day's work. It is argued that it was his duty the same as the engineer's to keep a constant lookout for any person or object which might be on the track. Certainly there is no such duty imposed upon a fireman as a matter of law, although under some circumstances we think it might present a question for the jury. The Missouri cases, however, afford little if any support for the contention that a railroad is under any duty in this respect in the absence of a custom or practice relied upon by an employee working in railroad yards. In Goodwin v. Missouri Pac. Ry., 335 Mo. 398, 72 S.W.2d 988, 991, the court stated: "Switchmen and other employees working in and about railroad yards or cars or engines moving or about to be moved therein are likewise under the duty of looking out for themselves, in the absence of a rule, custom, or assurance requiring a warning, when

going around, on, or near tracks, engines, or cars."

A similar rule was announced in Mayfield v. Kansas City Southern Ry. Co., 337 Mo. 79, 85 S.W.2d 116, 125. In Clark v. Terminal R. Ass'n of St. Louis, Mo.Sup., 111 S.W.2d 168, 171, the court stated: "If there exists a well-established custom for train operatives to keep a lookout for and to warn trackmen, known to and relied upon by such trackmen, or a rule of the railroad company to that effect, known to and relied upon by the trackmen, then it becomes the duty of such train operatives to keep such lookout and the trackmen may rely upon its being done * * *."

Assuming, however, that the fireman owed the decedent some duty in keeping a constant lookout for the latter's safety, it is still difficult to discern how such a lookout could have prevented the accident. The decedent was an experienced railroad man, familiar with the character of the work being performed, and if the fireman had seen him step from his own engine in the clear between the tracks, could there have been the slightest reason for the fireman to think that he would step in front of the Alton engine? From the time the decedent alighted from his engine, it was only two or three seconds until he was struck. What could the fireman have done during that time to have prevented the engine from striking him? Thus, even though we assume that which we think is doubtful, that is, that the fireman owed a duty to be on the lookout, we are of the view that there is no basis for an inference that such lookout under the circumstances could have prevented the accident.

The lower court on the matter of contributory negligence stated: "But even though it were shown that defendant's employees were guilty of some negligence, still Davidson's contributory negligence would bar recovery here. If there was a duty on the part of those operating the Alton engine to keep a look out for Davidson a like duty was imposed upon him to look out for them. If the fireman, had he been on the look out, could have seen Davidson, so Davidson had he been on the look out could have seen the Alton engine approaching. His opportunity to see the danger was equal to theirs. His negligence at least equalled theirs and bars plaintiff's recovery."

We agree with this reasoning. As we have already noted, the decedent was familiar with the circumstances which existed. He must have known that the track on which defendant's engine was traveling was a northbound track. Notwithstanding this, he stepped from his own engine, facing north, and never looked to the south, from which direction the Alton was approaching. It was daytime, the weather was good, and there was nothing to obstruct his view or to keep him from knowing of the approaching train had he looked in that direction. He placed himself in a position of known danger without using the slightest precaution for his own safety.

The Missouri cases strongly support the contention that such negligence bars recovery as a matter of law. A case quite similar on the facts is that of Loring v. Kansas City Ft. S. & M. R. Co., 128 Mo. 349, 31 S.W. 6, 8, wherein the decedent, a section man, walked in front of a switch engine without looking. The court stated: "It was simply impossible for Loring to have looked west for an approaching train, and not have seen the cars being shoved by the switch engine. The track was wholly unobstructed; it was daylight; the cars were in plain view, and close at hand; and in such a case, when he stepped upon the track, and was struck by the train, he would be conclusively presumed to have disregarded his duty to look and listen if the positive and unequivocal evidence of all the witnesses had not affirmatively established that he did not look, and his negligence precludes his right to recover."

Other cases on similar facts and much in point are Degonia v. St. Louis, I. M. & S. Ry. Co., 224 Mo. 564, 123 S.W. 807, 816; Van Dyke v. Missouri Pac. Ry. Co., 230 Mo. 259, 130 S.W. 1.

The judgment of the court below is affirmed.