E. FISK, Administrator of the Estate of Robert P. Lutz,
    Deceased, Appellant, v. THE CHICAGO, MILWAUKEE
        & ST. PAUL RAILWAY COMPANY.

**Railroads:** NEGLIGENCE AFTER DANGER IS PERCEIVED.  Where a work-
    man on a railroad track, on an earth embankment, the sides
    of which began to slope at the end of the ties of the two tracks
    thereon stepped back from the north track, out of the way of
    the train, thereon going east, onto the south track, and was
    struck by the engine of a train going west on that track, the
    engines having passed one hundred feet east of that point, the
    persons in charge of the west bound train cannot be held
    to have been negligent after his peril was, or by the exercise
    of care, should have been known to them, they having given
    the danger signal when he was seen to approach their track,
    as, if he stepped backward in time to have crossed their track
    before their engine reached that point, they had a right to
    assume that he would cross it, and, if he did not step back
    in time to cross it, they did not have time in which to avoid
    the accident after his peril was or could have been known.

CONTRIBUTORY NEGLIGENCE: *Jury question.*  A workman on an earth
    embankment just wide enough for the two railroad tracks
    on it, with only sufficient space between them for safe passage

of cars, but down the north side of which he could have gone to a place of safety, continued at his work of scattering cinders (no foreman being present) till a train thereon going east was near him, when, without looking, he stepped back on the south track and was struck by a train thereon going west; the engines having passed one hundred feet east of that point.

4 *Held*, that he was guilty of contributory negligence, notwithstanding a rule of the company that "trackmen must keep close watch of passing trains, and when anything wrong is discovered, immediately signal the engineer or trainmen, and use every effort to stop the train."

*Appeal from Cedar District Court.*—HON. H. M. REMLEY, Judge.

TUESDAY, MAY 15, 1900.

PLAINTIFF asks to recover damages by reason of certain alleged acts of negligence on the part of the defendant which it is averred caused the death of plaintiff's intestate, without fault or negligence on his part contributing thereto. The defendant answered, denying that it was negligent as alleged, and denying that deceased was free from negligence. At the conclusion of the evidence for the plaintiff, defendant moved for a verdict, which motion was sustained, and verdict and judgment for defendant rendered accordingly. Plaintiff appeals.—*Affirmed.*

*Rickel & Crocker* and *Preston & Moffit* for appellant.

*J. C. Cook* for appellee.

GIVEN, J.—I. The defendant owned and operated two tracks of railway from Marion, Iowa; one running westward to Council Bluffs, and the other southwest to Kansas City, Mo. These tracks were parallel and close together for some distance west of the station in Marion, and were laid on a bridge spanning Indian creek, and one spanning an undergrade highway crossing, and upon an embankment about twenty-five feet above the natural surface, which had

been formed by filling in earth along a trestle that had been formerly used. These two tracks belonged to the defendant, and the deceased had been in the employ of the defendant as a sectionman on the Council Bluffs line for a a year or more, and was familiar with these tracks immediately west of Marion, and with the manner of operating trains thereon. On the ninth day of November, 1895, about 8 o'clock in the morning, the deceased and one Taylor were engaged, at a point on said embankment within the limit of the city of Marion, in scattering cinders that had been deposited on the north side of the Council Bluffs track, which lay immediately north of the Kansas City tracks, with only sufficient space between for the safe passage of cars. With no train upon the track to obstruct the view, these men could see westward for a mile or more, and eastward for at least one thousand feet. While they were at work a freight train from the west on the Council Bluffs track whistled for the station at or near the post about seven hundred feet west of them, and, as it approached they stepped backward, with their faces to the north, onto the Kansas City track. A freight train had started west on the Kansas City track at such time as that the engines passed at about 100 feet east of where the men were. It is evident that deceased was not aware of the approach of the train from the east, as he remained on or so near its track that he was struck by the engine and killed.

II.   The grounds of defendant's motion for a verdict, necessary to be noticed, may be summed up as follows: That plaintiff failed to show that the defendant was guilty of negligence as charged, or that the negligence charged was the proximate cause of the accident; that the evidence fails to show that the deceased was free from negligence, and does show that the deceased was guilty of negligence contributing to his injury. The negligence charged is "that while said Robert P. Lutz was so situated and being, and absorbed in his work as aforesaid, and in

the discharge of the duties required of him by the rules of
the defendant company, the defendant company carelessly
and negligently ran two trains upon and over said tracks
at said point, but going in opposite directions; and the
same, in violation of law, were at that time running at a
high and dangeorus rate of speed, and in violation of the
ordinances of said town of Marion; and that without any
signals or warnings of any kind, and illegally and wholly
disregarding the duty that said defendant owed to said de-
cedent, and of the precautions that should have been taken
for his safety, ran one of said trains, to-wit, the one run-
ning on the Kansas City division, over, against, and upon
said decedent, bruising, crushing, and killing him, while
said trains were passing each other at or near said point."
An ordinance of said city of Marion provides as follows:
"That no locomotive engine, railway passenger car or freight
car shall be driven or run upon or along any railroad track
located upon a street within the corporate limits of the city
of Marion at a greater speed than the rate of six miles per
hour." The evidence shows that these tracks were not upon
any street within that corporation at the place of the acci-
dent, nor for a considerable distance east thereof. Said ordi-
nance also provided that "the bell of each locomotive engine
shall be constantly rung while moving within the city lim-
its." The evidence shows that these trains were both being
run at the speed of about twenty-five miles an hour. If it
may be said that this was not in violation of an ordinance,
because not upon tracks located upon a street, still it may
be questioned whether, under the circumstances, the speed
was negligent. The evidence tends to show that the bell was
not rung on the Kansas City engine, and that no signal was
given from that engine until the deceased and Taylor were
seen to approach or come upon the Kansas City track, when
the usual danger signals by whistle were given. Our con-
clusion on the question of contributory negligence renders

it necessary that we determine whether the evidence fails to show negligence on the part of the enginemen. We are in no doubt that it fails to show negligence on their part after the peril of deceased was, or by the exercise of care should have been known to them. If he stepped backward in time to have crossed their track before their engine reached that point, they had a right to presume that he would cross it. If he did not step back in time to cross it, they did not have time in which to have avoided the accident after his peril was or could have been known.

III. We next inquire whether the court was warranted in holding as a matter of law, that the deceased was guilty of negligence contributing to his inquiry. He continued at his work after the east-bound train whistled for the station until it was near to him, and then, without looking, as he could have easily done, to see whether a train was coming on the Kansas City track, as he knew was possible, he stepped backward over the few feet between the tracks onto or near the south track, where he stopped, and in a moment after was struck and injured. It is insisted that owing to the form of the embankment, and close proximity of the two tracks, there was no other place to which the deceased could have gone, out of the way of the east-bound train. We think it was entirely possible for him to have gone down either side of the embankment, especially the north side, to a place of safety from both trains. It appears that the defendant had in force a rule as follows: "(118) Trackmen must keep close watch of passing trains, and when anything wrong is discovered, immediately signal the engineer or trainmen, and use every effort to stop the train." It is insisted that, in view of this rule, the deceased was not negligent. This rule did not require the deceased to go to the place he did, nor to any other place of danger. He was not required to go where he did in the performance of any duty. No duty devolved upon him but

to look out for his own safety until the east-bound train was passing the place where he was. It was not until then that he was required by the rule to observe the passing train. It was before that duty was required that he was negligent in stepping back onto the south track without looking to see if a train was approaching thereon. It is evident that, not thinking that a train might come on the south track, he, without looking, went onto that track, as the most convenient place to avoid the east-bound train. The case is not similar in its facts to that of *Tobey v. Railway Co.*, 94 Iowa, 257 as relates to this question. In that case Tobey, a trackman, was engaged in driving a spike in one of the tracks. Just before he commenced driving he looked southward, and saw that no cars were approaching. While driving he observed an engine coming from the north on the track where he was working, and he continued to drive, so as to get the spike out of the way of the engine, until the engine was within ten or fifteen feet of him, when, without looking south again, he stepped back near another track, and was struck and injured by cars being moved from the south on that track. At the moment when he stepped back his attention was attracted by the efforts of a fellow workman to get a foot adz out of the way of the engine. He testified: "As I looked at this foot adz on the track, I was in the act of looking south; but this man attracted my attention, who was attempting to take the foot adz off the rail, for five or six seconds." This court said: "We do not think that it can be said, as a matter of law, that plaintiff, under these circumstances was negligent. He was justified in working as he did, and in finishing driving the spike, so that the engine might pass in safety over the crossing. The interval of time after he stepped off the track until he was struck was so short that it is not clear that he was not excusable for failing to see the approaching cars on another track. Besides, his attention was diverted by the effort of his companion, Scheeler, to get the adz off the track from in front of the

approaching engine. The evidence shows without conflict that after the men hallooed to him he did not have time to avert the accident. His companion did not observe these cars. After stepping off the track, plaintiff started to look in the direction from which these cars came, but was startled, and his attention attracted, as we have said, by the attempt of his companion to get the adz off the track. We cannot say that his failure to observe the approaching cars and the danger of their striking him, under such circumstances, was negligence." The differences between that case and this, bearing upon the question of contributory negligence, are these: Tobey was at the only place where his employment permitted him to be at the time, and was not negligent in being there, while the deceased was negligent in going where he did, instead of to the places of safety that were open to him. Tobey exercised care for his own safety by looking before he commenced driving the spike, and would have looked again if his attention had not been diverted, while the deceased, with ample opportunity to have looked in time to have avoided the accident, did not do so. The first duty of each was to himself, and Tobey carefully observed that duty up to the moment his attention was diverted, while deceased acted in utter disregard of his own safety. The duty of the deceased to observe the passing train did not require him to go into the place of danger, nor did it prevent him from looking and seeing the danger in time to avoid it. In *Tobey's Case,* the foreman whose duty it was to warn the trackmen of approaching trains was present, but did not warn Tobey. In this case, as the deceased must have known, the foreman was absent,—a fact that called upon him to exercise greater care in observing for himself.

We have given unusual care to the consideration of this record, and think that but one conclusion can be reached from the evidence, and that is that the death of deceased was contributed to, if not solely caused, by his own negligence.—AFFIRMED.

WATERMAN, J.—(dissenting).   As I understand the
majority opinion, there is a virtual concession that the case
should have gone to the jury on the issue of defendant's
negligence.   At any rate, I do not feel called upon to say
more on that point than merely call attention to the facts
as they are set out by Mr. Justice Given.   Their force and
effect are apparent.   The question is not whether we think
from the testimony that defendant was negligent, but, might
a jury reasonably have so found?   The principal issue dis-
cussed by counsel, and the one to which most attention is
devoted in the majority opinion, relates to the contributory
negligence of deceased, and I shall take that question up for
a somewhat critical examination.   While deceased was
obliged to look out for passing trains, this duty must be
considered in connection with other duties imposed upon
him.   I need give attention to one only of these other mat-
ters.   One of the rules of defendant company was as fol-
lows:   "Trackmen must keep a close watch of passing trains,
and, where anything wrong is discovered, immediately signal
the enginemen or trainmen, and use every effort to stop the
train."   Whether deceased could have performed the duty
enjoined upon him by this rule, had he attempted to descend
the bank, was for the jury to say.   If he could not, then it
was clearly for them also to say whether he was negligent
in attempting to perform these conflicting duties, one of
which called upon him to be watchful for his safety, while
the other put him in peril; for I shall show hereafter that
he was in danger if he remained on the top of the embank-
ment while these trains passed him.   If the case of *Tobey v.
Railway Co.,* cited by the majority, is to stand, the principles
decided should certainly rule a case like this, where the per-
son injured was perhaps confused by opposing duties.   The
majority seek, however, to distinguish the *Tobey Case* from
the one at bar on two grounds:   (1) That Tobey was where
he had a right to be when he was injured.   If this is correct,
then Lutz was where he had a right to be, for both were en-

gaged in repairing the track. (2) It is. said that Tobey looked for an approaching train before stepping back into a place of danger. He looked, it is true, before he began driving the spike, but how far he could see down the track does not appear. He says it was·a minute or a minute and a half after he looked before he stepped back to the place where he was struck. In that time the cars, running as they were at a rate of eight or ten miles an hour, would have come to the place of the accident from a point one-sixth. or one-seventh of a mile distant. It is not shown that Tobey could see so far. His looking down the track for danger did not excuse him, because it does not appear the danger was in sight to which he was exposed when he went upon the track a minute or more later. If Tobey had looked at the time he stepped back, there would be some foundation for the distinction, but under the facts shown there is none. While the fact that he so looked is mentioned in the opinion, it is but as an incident, merely, and not as an essential factor in the case. It is further said by the majority that the rule requiring deceased to observe passing trains did not compel him to go into a place of danger, nor absolve him from the duty of watching the passing trains. I grant this. But was it not for the jury to say whether, in the emergency presented, and in trying to perform all the duties imposed upon him, Lutz was negligent in acting as he did?

II. If it should be conceded that deceased was negligent, there was still an issue for the jury. Was defendant guilty of negligence after Lutz's danger was discovered? In considering this point it is necessary to keep clearly in mind the place where these men were working, as it was at the time of the accident. As said by the majority, deceased was upon the top of an embankment twenty-five feet high, which afforded a bed for two parallel tracks of defendant's road. The slope of the sides of this bank, as one witness says, was "about as steep as you could pile dirt." The slope began immediately at the ends of the ties. Another witness says

there is no place on the surface of the embankment, outside
the ties, where "a person can walk." The two tracks were
from seven and nine-tenths feet to eight and six-tenths feet
apart. The sides of a freight car (and both of these trains
were composed of cars of that kind) project out over the
track from twenty-six to thirty-three inches. At the time of
the accident both trains were running at the rate of about
twenty-five miles an hour. They were passing each other
when they reached the place of the accident. The evidence
tends to show that a man on the engine which struck deceased
was looking forward as the train moved towards the place
where the latter was working. The situation and movements
of deceased could have been seen for a long distance. It
was apparent the two trains would pass at about the point
where he was at work. With these trains passing at a high
rate of speed, there was no place of safety on top of the
bank. It was also apparent that deceased, at the rate he was
moving, would not be able to cross the Kansas City track
in front of the train; for he was struck, as some witnesses
say, almost instantly after he stepped on the track. The
persons in charge of the engine will be presumed to have
knowledge of the rule we have set out, requiring deceased to
observe passing trains. When deceased stopped his work on
the Council Bluffs track and started to move across the sur-
face of the embankment, his danger was, or should have been,
apparent to an onlooker. When one of the men on the
engine that struck deceased was first seen looking forward,
the Kansas City train was some three hundred and fifty feet
from deceased, and the latter had then started to leave the
track on which he was working, yet there is testimony to
show that no warning was given until just as deceased was
struck. The majority opinion disposes of this branch of the
case on the assumption that those in charge of the Kansas
City engine had no occasion to suspect danger to de-
ceased until he stepped between the rails of the track on

which they were running. But, under the facts which we have set out, no such rule prevails. In *Moore v. Railroad,* 47 Iowa, 689, this court said, on a somewhat similar state of facts: "The defendant asked an instruction to the effect that if, when the section hands on the car saw the plaintiff, he was not on the track, then they were not bound to stop the car or slacken the speed. This was refused, and the ruling is assigned as error. It was clearly incorrect. If plaintiff was not, when first seen by the workmen, upon the track, but approaching it, with apparent intention of going upon it, without discovering the car, ordinary care required its speed to be slackened. The duty of those on the car required them to stop it, if danger was threatened to plaintiff, whether he was on the track, near it, or approaching it." Of course, in what we say of the facts, we take the testimony most favorable to plaintiff. This she is entitled to have done. The case should have gone to the jury.

SHERWIN, J., joins in this dissent.