pleading, but that all of them were on a question of evidence and only asserted a rule of evidence. But even the dictum in Mitchell v. Thorne does not declare the ruling of pleading asserted in the dictum in Henriques v. Yale University. It reveals, though obscurely, that there was no allegation that the plaintiffs were the only heirs of the collateral branches. But as the action was maintainable even though they were not such heirs, all said on that subject was necessarily obiter. The opinion in the case of Reiners v. Brandhorst, 59 How. Prac. 91, holding as it does that an allegation of intestacy is necessary to an allegation of heirship, in face of the trite rule that intestacy, and not testacy, is the legal presumption, does not need to be discussed. It cites no authority and was an off-hand inadvertence.

---

(114 App. Div. 807)

### KEELER et al. v. NEW YORK CENT. & H. R. R. CO. et al.

(Supreme Court, Appellate Division, Second Department.  July 24, 1906.)

RAILROADS—PERSONS ON TRACK—LICENSEES—DEATH—CONTRIBUTORY NEGLIGENCE.

Intestate, an electrical engineer and superintendent of an electric company doing certain construction work on the elevated portion of defendant's railroad track, was struck and killed by a passing train at about 8:15 a. m., as he was standing in an exposed position, with one foot on a pipe line and the other on a tie of the track on which the train passed. The train was visible for 1,000 feet before it struck intestate, who had been warned to put out lookouts, and knew that trains approached that point without signal. There was no present necessity for intestate's presence at the point in question, and if he had stood entirely on the pipe line the train would have passed him in safety. There was also no evidence that intestate exercised any care before taking his position nor while occupying the same. *Held*, that such facts were insufficient to establish intestate's freedom from contributory negligence.

Appeal from Trial Term, Westchester County.

Action by Harriet A. Keeler as administratrix, and George H. Pierce as administrator de bonis non, of Thaddeus B. Keeler, deceased, against the New York Central & Hudson River Railroad Company and another. From a judgment in favor of plaintiffs, and from an order denying defendant's motion for a new trial, they appeal. Reversed.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and RICH, JJ.

Robert A. Kutschbock, for appellant New York Cent. & H. R. R. Co.

Hugh A. Bayne, for appellant New York, N. H. & H. R. Co.

Omar Powell, for respondents.

JENKS, J.  The action is for negligence. On October 30, 1902, a signal company was at work upon a contract with the defendants. The plaintiff's intestate, a qualified electrical engineer, was the superintendent of construction for the signal company. The work had been doing for two months on the elevated fabric of the defendants near the Harlem River Bridge. This fabric bore four tracks, on which daily

600 regular trains passed to and from the city of New York. The intestate had worked at this place in 1896 and in 1897, and he had attended this work off and on almost every day for the two months. The trains approached the place without signal by whistle or bell, and the intestate must have known that there were no lookouts to give warning, because he had been notified by the defendants' inspector within three days that it was his duty to provide them, and had been requested to see to it. Semaphores alone announced the coming of trains. Two of the tracks were exclusively for north-bound trains and two exclusively for south-bound trains. A train approaching on a north-bound track could be seen 1,000 feet away, and thereafter remained in constant vision. About 8:15 a. m. of the clear day, October 30, 1902, the intestate was struck and killed by a regular train running on track No. 3, one of the north-bound tracks. His administratrix has recovered a large judgment for the negligence of the defendants, which I think cannot stand, because she has failed to establish the freedom of her intestate from contributory negligence.

The principle which is fatal to the judgment is well expressed by Judge Thompson in his Commentaries on Negligence (2d Ed.) vol. 5, § 5372, as follows:

"Selecting the more dangerous of two ways of discharging a duty. Generally speaking, where an employé has a duty to perform, and there are two ways or methods of performing it or of reaching the place of performing it, one of which is dangerous and the other safe, or one of which is more dangerous than the other, and the employé knowingly and voluntarily, or through negligent ignorance, and without there being any emergency, selects the dangerous one or the more dangerous one, in consequence of which selection he brings upon himself an injury which probably would not have befallen him if he had selected the other one, he cannot make his own negligence in making the choice the ground of recovering damages against his employer, but contributory negligence will be imputed to him as matter of law."

See, too, Shearman & Redfield on Negligence, 207; Goodall v. N. Y. Cent. & H. R. R. R. Co., 89 Hun, 559, 35 N. Y. Supp. 544; Keating v. Manhattan R. Co., 110 App. Div. 108, 97 N. Y. Supp. 137; Sammon v. N. Y. & Harlem R. R. Co., 38 N. Y. Super. Ct. 414, affirmed 62 N. Y. 251; Werk v. Illinois Steel Co., 154 Ill. 427, 40 N. E. 442; Sours v. R. R. Co., 84 Minn. 230, 87 N. W. 766; Price v. Hannibal & St. J. R. R. Co., 77 Mo. 508; Brady v. Railroad Co., 20 R. I. 338, 39 Atl. 186; Roskoyek v. St. Paul & Duluth R. R., 76 Minn. 28, 78 N. W. 872; Fisk v. Railroad Co., 111 Iowa, 392, 82 N. W. 931; Penn. R. R. Co. v. O'Shaughnessy, 122 Ind. 588, 23 N. E. 675. The testimony is that immediately before the accident the intestate stood with one foot on a pipe line and one foot on the tie of the railroad track. There is testimony that this is "an exposed position," but testimony is not needed, for this is self-evident. There is also testimony that if one at this point stood straight on the pipe line a train would pass by him "nicely." There is failure of proof to show, or tending to show, that any of the duties of the intestate, general or immediate, justified him in taking such a position at this point. On the contrary, all of the testimony as to his work at that time indicates that he could have taken a position in a place where he would have been safe from any passing train. The testimony of the plaintiff's witnesses is that her intestate at this time

was "doing nothing," or was watching his workman Kolb, or his workmen on track No. 2. If the intestate was doing nothing, then there was no reason for his perilous stand. If he was watching Kolb, there is evidence that the intestate had been walking southward with Kolb but a moment before, that Kolb had turned back ahead of him, and had stopped at a space to cut a screw in a pipe. This space between tracks 2 and 3 was 13 feet wide (10 feet wide between the overhang of passenger coaches), and 30 feet long. In it was set the pipe vise at which Kolb was at work. No reason appears why the intestate could not have stood in that space to watch Kolb, as well as he could from the point where he did stand. In fact, he came to that space, and instead of stopping to stand in it passed on but "a few feet," and then stopped. If the intestate wished to watch the workmen on track No. 2, no reason appears why he could not have gained a viewpoint either in this said space which he had passed, and but a few feet away, or in the space of 10 feet by 15 feet a few feet ahead of where he stood. Goodwin, his assistant, testifies that he had told the intestate as the latter had come to inspection that "everything was lovely,". and there is not the suggestion that anything unforeseen had come to pass or any emergency had arisen. The evidence does not show or indicate any reason which to a man of prudence under the circumstances would seem to require him in his function to stand at the point in question, or to stop there in preference to other and safe places near by.

The learned counsel for the respondent insists that the contention that the intestate "chose an unsafe place" is incorrect, for he says the correct statement is that the intestate, "being necessarily and properly down the tracks, did not get off in time to avoid the train." The statement "necessarily and properly down the tracks" begs the question. The learned counsel writes in his points:

"Keeler and Kolb had just been down this track 140 feet to examine work which Kolb was putting in. While there the train ahead of the one that hit Keeler passed, according to the schedule two minutes ahead. Kolb came back ahead of Keeler. So Keeler had just walked back the 140 feet, and stepped on the track an instant to inspect Kolb's cutting threads for work which they had just been measuring down the track."

On the counsel's own version how does it appear that the intestate, Keeler, was "necessarily and properly on the track"? Kolb was at work, as I have shown, in a safe place, which the intestate passed by for a few feet to take his position with one foot on the tie of the track. There can be no question of his being necessarily and properly there in the eye of the law, unless it appear that he could not have inspected Kolb's work equally as well by stopping and standing in the safe place where Kolb was at work, to which place he had come first, or by so standing at the point he selected as to suffer a train coming on track No. 3 to pass him by. There is no suggestion that the intestate was overtaken, and it does not appear that at any period throughout the time he was on the work it was necessary to pass onto the track, or to take a position of such peril. Even if the intestate had been necessarily and properly down the tracks, it does not appear that he had been compelled at any time to go upon the tracks. Indeed, another train had just passed him, and, even if he had been compelled to pass along the

tracks, that was no justification for his standing upon the tie, provided there was a safe place as well adapted for his inspection of Kolb's work and equally accessible. He was not spying upon Kolb. This question then survives the evidence: Why did the intestate voluntarily take a dangerous place when there was one safe place, if not two safe places, just at hand? And, even if that were answered to his exculpation, a refinement might remain, presenting the question of prudence in standing with one foot on pipe line and the other on tie, when an upright position on the pipe line would have left him unscathed from the passing train. The learned counsel for the respondent cites Loomis v. Lake Shore & M. S. R. R. Co., 182 N. Y. 380, 75 N. E. 228. But in that case the decedent's duty required him to walk in the way of danger on the right side of the train, and there are other features of discrimination.

And I think that the plaintiff did not sustain her burden in another respect. She did not show that her intestate exercised 'the slightest care before taking this position or while he occupied it. I may assume that from his vocation of electrical engineer and superintendent he was intelligent enough to appreciate the peril of standing with one foot on a tie of a track when a train is passing along that track. There is pretty strong indication that he must have known that all trains passed without bell or whistle. His workmen knew it, for they had been there for two months. He had worked there twice before, and had been there off and on almost every day, and there were 600 trains a day. He could not have relied upon outlooks, for he was told but three days before that it was his duty to post them in order to warn his men and himself, but there is no evidence that he had done so or that any other had done so. Plaintiff's own witness testifies that the rumble and roar of a train coming over the bridge, as at this time, "killed" the noise of a train approaching along the rails. The trains on track 3 ran but one way, the approaching train was visible 1,000 feet distant, and was then in constant view. There were semaphores. The intestate had just been warned of the coming of this very train by a bridge tender who had seen the signal. The intestate was not engaged at work which required his station more or less constantly near the track or between the rails. He was a superintendent. He had just come to this point. It does not appear that any duty then necessarily arrested his attention so as to prevent him from glancing down the rails, and yet it appears that he put his foot on that tie without a glance for a coming train, and thus stood without a look. He took no precautions whatever. See Tomko v. Central Railroad Co. of N. J., 1 App. Div. 289, 37 N. Y. Supp. 144; Keating v. Manhattan R. Co., 110 App. Div. 108, 97 N. Y. Supp. 137.

I advise a reversal and a new trial.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.