of his compensation had been ascertained, to the end that he might be paid for the services he concededly had rendered, and inasmuch as the whole amount was demanded of him, allowing him to retain nothing for his services, I can see nothing in his refusal to pay over the entire amount that should justly subject the attorney either to censure or criticism.   It seems to me that a fair disposition of this matter requires that the attorney should pay over to the petitioner, or to his attorney, within 10 days after service of a copy of the order, the sum of $3,502.08, with interest on $1,976.90 thereof, from the dates said moneys were deposited by him in banks or trust companies to the date of such payment to petitioner or his attorney, at the rate of 4 per cent. per annum, and with interest on $1,525.18 thereof from the date when the trustee made demand for payment of said moneys to the date when said payment shall be made to petitioner, or his attorney, at the rate of 6 per cent. per annum; it appearing that the attorney has drawn from the banks $1,525.18 of the amount found by the referee to be in his hands. But in view of the fact that the demand was made for the full amount collected by the attorney, regardless of his undoubted claim and lien for services, I think he was justified in refusing to pay over the sum demanded until his claim for services had been adjudicated, and therefore that the attorney should not be compelled to pay either the costs or disbursements of this proceeding.

Let an order be prepared and submitted accordingly.

---

### GRATHWOHL v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, First Department.  December 7, 1906.)

1. RAILROADS—PERSONS ON TRACK—DEATH—NEGLIGENCE—PROXIMATE CAUSE.
   Defendant operated an elevated railroad containing four tracks, the two westerly being used for outgoing trains.  Intestate was employed by a signal contractor in the construction of automatic signals on the structure, and while so engaged, with full knowledge that the tracks were being almost constantly used by trains, in obeying an order of his superior servant to center a signal, he started to cross the tracks in front of an approaching train on the most westerly track.  He crossed this track in safety and was struck and killed by an engine approaching without signal in the same direction on the next track.  It did not appear that defendant or any of its employés had notice that plaintiff's crew were at work on that morning, or that their work required them to be on the tracks or in such a position that they could be injured by the trains.  Held, that defendant's negligence, if any, in failing to give warning of the approach of such engine, was not the proximate cause of intestate's death.

2. SAME—CONTRIBUTORY NEGLIGENCE.
   Intestate's view of the train approaching him on the most westerly track being unobstructed, and he having knowledge that trains were liable to be running on the adjoining track, he was not shown to have been free from contributory negligence.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 1294.]

   Patterson and Houghton, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Julia Grathwohl, as administratrix of the estate of Joseph H. Klippel, deceased, against the New York Central & Hudson River

Railroad Company. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed, and new trial ordered.

Argued before PATTERSON, INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Robert A. Kutschbock, for appellant.

Frederick A. Kuntzsch, for respondent.

INGRAHAM, J. The tracks of the defendant from the Harlem river to the Forty-Second street depot are upon an elevated structure over Fourth avenue. The tracks cross the Harlem river on a bridge, and then proceed on this structure to the depot. This structure is used exclusively for railroad purposes, and upon it there are four tracks. The two westerly tracks are used for trains going from the depot, and the two easterly tracks going to the depot. The yards of the railroad company are located north of the river. The tracks are used both for trains carrying passengers from the depot and for locomotives going to and from the railroad yards to the depot. The two westerly tracks are known respectively as tracks 3 and 4; No. 4 being the westerly track, and No. 3 being the track to the east. About two months prior to February 6, 1903, a corporation known as the "Pneumatic Signal Company" was doing some work under a contract with defendant in relation to automatic signals upon this elevated railroad structure. On February 6, 1903, two employés of the signal company seemed to have been at work on this structure adjusting the signals. One Heafy was in charge of the work, assisted by the plaintiff's intestate. Trains were constantly passing and repassing on the tracks. Heafy had been at work for two months upon this structure and upon the bridge crossing the river, and plaintiff's intestate had been assisting Heafy for several days. On this morning Heafy wanted to ascertain the drop of a signal upon a pole, and he told the plaintiff's intestate to go to the switch and center the lever. This switch was located just south of the drawbridge, and in order to get to it the plaintiff's intestate had to cross the tracks. On each side of this structure and alongside the tracks there was a passageway so that those engaged in working upon the track could allow trains to pass. Heafy, upon giving this order, climbed up on the top of a pole. The plaintiff's intestate started for the switchhouse to obey the instructions that he had received. As he started a train drawn by a locomotive was proceeding north on the westerly track (No. 4), and there was also a detached locomotive proceeding north upon track No. 3. A witness who was sitting in the window of a house on Fourth avenue, overlooking the structure, testified that she saw the plaintiff's intestate look up and down the road and start to cross the tracks; that when he started the train on the westerly track was approaching, and he crossed in front of it. Apparently he crossed that track in safety, but was struck by the engine upon track No. 3 and received injuries which resulted in his death.

This accident happened just after 9 o'clock in the morning, a clear day with nothing to obstruct the view of the tracks, except that it is possible that the approaching train concealed the locomotive on track

No. 3.   These men were not working upon the tracks, nor were they employés of the defendant; but so far as appears their work did not require them to go upon the track, and while attending to their work they were in a position of safety.   I cannot find that there is any evidence that the men were accustomed to cross the tracks, or that any of the employés of the defendant had notice of the fact that these men, working at these automatic signals, were at any time required to be upon the track.   The only claim of negligence on the part of the defendant is based upon a failure to give notice of the approach of the train or locomotive; but the train on track No. 4 was in plain sight, and the evidence is that the plaintiff's intestate looked towards it, and he must therefore have seen it.   So that the failure of the defendant to give warning of the approach of the train was not in any sense the proximate cause of the injury.   The place at which these men were at work was not a depot or crossing, or a place at which there were men constantly at work to the knowledge of the defendant or its employés, but an elevated structure upon which trains were passing, used exclusively for the trains, and there is nothing to show that the defendant or any of its employés had any notice that these particular men were at work on this morning, or that their work required them to be upon the tracks or in such a position that they could be injured by the trains. The men understood the situation and knew that trains were constantly passing, and that at any time a train was liable to pass upon either or all of the tracks.

Upon this evidence I do not think the jury was justified in finding the defendant guilty of negligence or the plaintiff's intestate free from contributory negligence.   I do not think that the cases relied on by the plaintiff, the latest of which is Loomis v. Lake Shore & M. S. R. Co., 182 N. Y. 380, 75 N. E. 228, applies to this particular situation.   The question is whether there was any duty upon the employés of the defendant to give notice of the approach of each train that passed over those tracks at this locality.   In the Loomis Case, supra, the accident happened upon the tracks in the yards of the defendant in the city of Buffalo.   The tracks of the defendant ran east and west through the yard, where there were a number of parallel tracks used for storing cars. About 7 o'clock in the morning, a clear July day, a freight train on which the plaintiff's intestate was a workman was standing on one of the main tracks of the road.   The deceased was walking towards the end of this train between the east and west bound tracks, and before he reached the end of the train he was struck by the rear of the tender of a passenger engine.   It was proved that this locomotive was being run in violation of the rules of the defendant road, and was backing over a public highway through a yard without any employé in a situation where he could see those that were on the track over which the locomotive was proceeding.   In this yard the employés of other roads were working, and the locomotive, without warning or notice, backed through it, and in violation of the rules of the company.   It was a place of danger, and the situation there required some precaution by the employés of the defendant in backing the engine to avoid injuring those upon the tracks engaged in the performance of their duties in

the yard. The fact that the defendant had made rules regulating the use of its locomotives and trains through this yard, which required that no train must be backed unless there was a man on the rear car to see if the crossing was clear, which rule was violated, was some evidence of negligence on the part of those in charge of the locomotive which caused the injury. The rule that required the railroad company in operating its trains or locomotives in a railroad yard or over public crossing, or other like places, to give notice of the approach of trains or locomotives, or to take some measures for the protection of those exposed to the danger of being run over, does not apply to the main track of a railroad of this character over which trains are constantly passing. There is no evidence to show that the defendant or its employés had notice that the plaintiff's intestate and Heafy were working alongside of the track on this particular morning. Certainly the engineer of this locomotive proceeding on the middle track could not anticipate that any one would pass immediately in front of the locomotive of the train on track 4, or that the situation required that he should give a signal. But I cannot see that the lack of warning was at all the proximate cause of the accident. The deceased knew of the situation, knew that trains were constantly passing and repassing at this point. If he looked toward the approaching train, he must have seen it. Whether he also saw the engine coming on the third track we do not know, but he saw all that a bell or other warning would have told him.

Nor do I think that there was evidence to show that the deceased was free from contributory negligence. He had full knowledge of the situation. It was a bright day, with nothing to obstruct his view. He was required to cross the tracks upon which trains were constantly passing. He must have seen a train approaching and crossed directly in front of it. There was nothing that required him to cross in front of the approaching train, instead of waiting until it had passed. It was essentially a dangerous act, and the accident was directly caused by attempting to cross as he did, without waiting for the train to pass.

I think, therefore, that the verdict that the defendant was guilty of negligence, or that the plaintiff's intestate was free from contributory negligence, was not sustained by the evidence, and it follows that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

LAUGHLIN and CLARKE, JJ., concur.

PATTERSON, J. I do not concur in the opinion of the majority of the court reversing the judgment and order appealed from. The plaintiff's intestate was not a servant of the defendant corporation, but of a contractor with that corporation to do certain work in repairing the system of signals on the defendant's roadway near the bridge over the Harlem river. The decedent had been engaged in that work under the direction of a foreman of the contractor and for a sufficient time to enable the defendant's officers and employés to have knowledge of that fact. He was working at a dangerous place on the roadway. Two hundred and seventy trains passed daily the point at which he

was working, which was near the westerly or fourth track.  It is admitted that he was killed either by a train proceeding northward on that track or by a locomotive proceeding in the same direction on the third track; and, as the evidence shows that he had passed beyond the fourth track in safety, he must have been killed by the locomotive moving on the third track,. and which was concealed from observation when he started to cross from the west to the east.  The locomotive was running at the rate of 35 miles an hour.  A bell was not rung nor was a whistle sounded.  There was a curve in the line of railway just to the south of the point at which the intestate started to cross the tracks, and it is apparent that the position of the train on the fourth track prevented his seeing the locomotive on the third track.  In such circumstances, it was the duty of the defendant to give to those who were working on or near the track some notice of danger from approaching trains, in order that they might escape that danger.  Loomis v. Lake Shore & Mich. So. Ry. Co., 182 N. Y. 380, 75 N. E. 228; Sullivan v: Tioga R. R. Co., 44 Hun, 304, affirmed 112 N. Y. 643, 20 N. E. 569, 8 Am. St. Rep. 793; Conlan v. N. Y. C. & H. R. R. R. Co., 74 Hun, 115, 26 N. Y. Supp. 659; affirmed 148 N. Y. 748, 43 N. E. 986; Dempsey v. N. Y. C. & H. R. R. R. Co., 81 Hun, 156, 30 N. Y. Supp. 724; Wells v. Brooklyn Heights R. R. Co., 67 App. Div. 212, 74 N. Y. Supp. 196.

I think there was evidence to go to the jury sufficient to show that the defendant failed in its duty to protect plaintiff's intestate while he was engaged in working at appliances upon its roadway used in the operation of the road.  The subject of contributory negligence was also one for the jury.  We may assume that the plaintiff's intestate had been working at or about the point at which he was killed for a sufficient length of time to enable him to know that certain dangers surrounded him, and it was undoubtedly his duty to be vigilant and careful and to do everything that a prudent and reasonable person would do to protect himself from injury.  It is true that he crossed the fourth track only 10 or 12 feet in front of the train proceeding on that track.  There is no reason to doubt that it was necessary for him to cross the fourth and the third tracks in order to get to the place to which he had been sent by Heafy, to test the signal switches.  The evidence is that, before he started to cross the tracks, he looked south, and doubtless he saw the approaching train; but there is nothing in the evidence to indicate that he could have seen the locomotive on the third track.  Nor is there anything to show that he could or should have anticipated the presence of that locomotive running side by side with the train in the same direction.  The case differs radically from Keeler v. N. Y. C. & H. R. R. R. Co. (2d Dept.; decided July, 1906) 100 N. Y. Supp. 235, which was an action similar to this.  There an employé of the contractor working on the elevated signal system was killed on the same viaduct by a train of the New York, New Haven & Hartford Railroad Company, but in such circumstances as induced the court to hold that he was guilty of contributory negligence as matter of law, and the facts proven fully justified that conclusion.

I think it was for the jury, in this case, to say whether the plaintiff's intestate did anything, or omitted to do anything, which could be re-

garded as negligence on his part. The case went to them on a very satisfactory and sufficient charge, and the judgment and order should be affirmed.

HOUGHTON, J., concurs.