|     |     |
| --- | --- |
| 56  | 439 |
| s61 | 531 |

CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY V.
ANTHONY YOST.

FILED OCTOBER 20, 1898.   No. 8296.

Injury at Railway Crossing: CONTRIBUTORY NEGLIGENCE: EVIDENCE.
The undisputed evidence in this case *held* to establish (1) that
the defendant in error stepped upon a railway track without
looking to see if a train or engine was approaching; (2) that
his conduct under the circumstances afforded conclusive evi-
dence that the act was negligence; (3) that such negligence was
the proximate cause of the injury for which he sued.

ERROR from the district court of York county. Tried
below before BATES, J. *Reversed.*

*J. W. Deweese, F. E. Bishop,* and *F. C. Power,* for plain-
tiff in error.

*George B. France* and *Merton Meeker, contra.*

RAGAN, C.

Anthony Yost, in the district court of York county,
sued the Chicago, Burlington & Quincy Railroad Com-
pany for damages for injuries sustained by him by being
struck by one of its engines. The claim of Yost was that
the proximate cause of the injury he had received was the
negligence of the railroad company's employés. He had
judgment, to review which the railroad company has
filed here a petition in error.

A contention of the railroad company is that the prox-
imate cause of Yost's injury was his own negligence. Al-
ger is a station on the line of the railroad company in
the state of Wyoming. At or near this station is a
gravel-pit. About a mile west of the station is a water-
tank. In September, 1894, the company was hauling
gravel from this gravel-pit to points on its line west of
Alger. At that time there was a switch engine at Alger
which sometimes assisted the gravel-train up a grade
west of the gravel-pit. This switch engine was accus-

tomed several times each day to go out to the water-tank for water, sometimes pushing the gravel-train and sometimes following it. With all these facts Yost, who was a section-hand in the employ of the railroad company, was familiar. About 9 o'clock on the morning of September 6, 1894, Henry Walker, the section-foreman, his brother, John Walker, William Yost, his brother-in-law, the defendant in error, and one Jacob Lapp were at work surfacing and ballasting the track between Alger and the water-tank. At the place where the men were at work the roadbed rested on a fill about five feet high. Ninety feet east of where the men were at work the railway track was crossed by a highway, and from the place where the men were at work toward the east for a distance of seven hundred feet the view of the railway track was wholly unobstructed. At this time, and while the men were so engaged, a gravel-train, consisting of something like twenty cars and pushed by an engine, came from Alger going west, toward where these men were at work, running at the rate of about eighteen miles an hour. Following this gravel-train and about one hundred fifty feet behind the same was a switch engine going to the tank for water. Just before the gravel-train reached the highway crossing the whistle on the engine was sounded, the four men at work on the track heard the signal, Henry Walker, the foreman, and Lapp stepped off the track on the north side thereof, and John Walker and Yost stepped off the track on the south side thereof. The gravel-train pushed by the engine passed the place where they were at work, and as Yost was about to step back on the track he was struck by the following switch engine and injured.

The argument is that Yost stepped, or attempted to step, back on this track without looking to the east to see if an engine or train was following, and that his failure to look was negligence and the proximate cause of his injury. If Yost neglected to look to the east before stepping upon the track, was such neglect negligence?

He was a man about twenty years of age, and had for more than a year been in the employ of railway companies as a section-hand. He had been working on this particular track at and about this place for about a week before he was injured. He knew that this switch engine passed and repassed several times each day between Alger and the water-tank; that it sometimes helped push the gravel-train and sometimes followed it. He had been warned by his brother-in-law, the section-foreman, not only to step off the track when this gravel-train approached, but to step off the fill so as to avoid danger from gravel or stone falling from the passing trains. He had been instructed by his foreman that after a train passed not to go back on the track without looking in the opposite direction from which the train was going to see if an engine or train was following. Under these circumstances we think that all reasonable and unprejudiced minds would concur in saying that if Yost stepped, or attempted to step, back on this track after the gravel train passed without looking on the track towards the east his conduct was negligence.

Did Yost look to the east before attempting to step back on the track after the gravel-train had passed? He testified:

Q. Now, when you were working there, what occasion did you have, if any, to leave the track? How did you come to get off the track? What made you do that?

A. My boss holloed out to let the train have the track.

Q. What train was that? What kind of a train?

A. It was a gravel-train.

Q. Now, when the boss said that what did you do?

A. Just stepped down off the track.

Q. How far, about, did you go from the track?

A. About five or six feet.

Q. Now, after you had stepped off the track and the train came along, or near by, what did you do then?

A. Well, after it was by, we got up on our work again.

Q. In the place where you were?

A. Yes, sir.

Q. Now when this gravel-train went by did you attempt to do that?

A. Yes, sir.

Q. Did you get on the track, or do you know?

A. No; I did not get quite on.

Q. Now after you attempted to get on the track what is the next thing you remember?

A. I got struck.

Q. In getting back on the track at this time you were hurt. I will ask if you went back in the manner you usually did?

A. Yes, sir.

Q. State in what manner you did at this time.

A. Well, I just got down about five or six feet away from the track. When this gravel-train was by, I just stepped up as I usually did, and looked both ways, and just as I got up here I got struck.

Q. Now you state that when you went back you looked along the track. Did you see any switch engines coming?

A. No, sir.

Q. Which way were you standing, and how were you approaching the track?

A. I was standing facing the north.

Q. What time of the day was it that this accident happened?

A. It was about half past nine o'clock in the morning.

Q. Was the sun shining?

A. Yes, sir.

Q. How far away was it,—that is, the gravel train— which had just passed when you got on the track?

A. Oh, about six feet.

Q. Did you go clear up on the track?

A. No, sir.

Q. About how close did you get to the south rail?

A. Oh, close enough so that the engine struck me.

Q. Were you still standing outside the rail?

A. Yes, sir.

Q. What do you mean by saying that you looked both ways before going back?

A. Well, I looked toward this train—the gravel-train —that had passed; and then when the train was past, to go by, I looked the other way and went up toward the track again.

Q. You got up there when the engine of the gravel-train was only about six feet away?

A. Yes, sir, started to go up.

Q. The fact of it was, you did not see the engine.

A. I did not see it.

Q. Necessarily you did not look?

A. I did look.

Yost further testified that at the time he was struck the wind was blowing and that it was dusty.

Now the undisputed evidence is that a man standing at the point where Yost was struck and looking east on the track could see a man on the track for a distance of seven hundred feet. The accident happened in the day-time. The weather was clear and the wind was blowing from the south, and whatever dust was made by the passing train was blown to the north side of the track, and Yost was on the south side. John Walker, Yost's brother-in-law and a witness in his behalf, testified that he stepped off the track at the same time Yost did, and on the same side of the track, but seems to have been standing immediately west of Yost when the engine pushing the gravel-train passed, and he testifies that he, Walker, was looking at this engine; that he was not looking back east, and that the fireman on the engine pushing the gravel-train motioned to him and that he turned around toward Yost to the east, and at the instant was knocked down by Yost being thrown against him. Here then is a positive demonstration of one of two things: Either Yost is mistaken in saying that he did look east before stepping up to this track, or if he looked east and did not see this switch engine it was because he

failed to use his sense of sight. The contention that he could not see because of the dust is absolutely worthless in the face of the statement of his brother-in-law, who was within a foot or so of him, that he was looking at the pushing engine and saw the motion of the fireman on it to him. If Walker could see a man's hand in the dust Yost could have seen a thirty-ton engine. We think the evidence in this record shows beyond all doubt that Yost stepped back, or attempted to step back, upon this track without looking to the east before so doing, and that in view of all the circumstances in the case his neglect to look was negligence; that this negligence was the proximate cause of his injury; and he cannot recover.

We are not deciding that always and under all circumstances a man is guilty of negligence who steps on a railway track without looking up and down the same to see if an engine or train is approaching. Generally, the going upon a railway track before looking along the line each way to see if an engine or train is approaching is evidence of negligence, but it is not always conclusive evidence of negligence. A person may have gone upon a railway track under such circumstances as would exonerate him from the charge of negligence. But in the case at bar the record discloses no excuse whatever for Yost's going on this track without looking to the east. This is not a case in which he was in a position of danger and in his confusion chose the more dangerous of two ways; nor is it a case in which he went from a place of safety into one of danger in an attempt to save life or property, as in *Omaha & R. V. R. Co. v. Krayenbuhl*, 48 Neb. 553, and *Missouri P. R. Co. v. Lyons*, 54 Neb. 633. Nor is this a case in which a section-man, while in the performance of his duties on the track, was hurt by an engine creeping upon him without giving any signal of its approach, as in *Union P. R. Co. v. Elliott*, 54 Neb. 299. Yost had just been warned off this track because of the danger of the approaching engine and train, and he left a place of safety and heedlessly and carelessly stepped

back on the track without exercising any care whatever for his safety by looking east on the track to see if there was a train or an engine following.

Yost's argument is that the railway company was guilty of negligence in permitting this switch engine to follow so close to the gravel-train. It may have been guilty of negligence in that respect, but if so, the answer is that such negligence was not the proximate cause of Yost's injury.

Another argument is that the switch engine did not sound a whistle or ring a bell or give other signal at the time it approached this highway crossing. It is undisputed that the gravel-train engine sounded its whistle; that all the section-men heard it and stepped off the track because of the signal. As to whether the other engine sounded a whistle at the time it approached the crossing it may be said there is a conflict in the evidence; but assuming that no signal was given by the switch engine at that time, that neglect did not cause Yost's injury. Yost alleged in his petition that he had been injured through the negligence of the railway company, without fault on his part and while in the exercise of ordinary care. The evidence does show that he was injured. We assume that it shows that the railway company was guilty of negligence, but the evidence does not sustain his contention that he himself was at the time in the exercise of ordinary care, but on the contrary it affirmatively shows that the proximate cause of his injury was his own neglect. The judgment of the district court is

REVERSED.