JOE ROSKOYEK v. ST. PAUL & DULUTH RAILROAD COMPANY.

April 19, 1899.

Nos. 11,618—(50).

Railway—Death from Wrongful Act—Contributory Negligence—Evidence.

*Held*, that the evidence in this case establishes the contributory negligence of the plaintiff's intestate, as a matter of law.

Action in the district court for Ramsey county by the administrator of the estate of Roman Kranc, deceased, to recover $5,000 damages on account of the death of decedent. The case was tried before Kelly, J., and a jury, which rendered a verdict in favor of

plaintiff for $1,500.    Afterwards the court made an order granting
defendant's motion for judgment in its favor notwithstanding the
verdict, and from a judgment entered pursuant thereto, plaintiff
appealed.    Affirmed.

   D. J. Keefe and Humphrey Barton, for appellant.

   Hadley & Armstrong, for respondent.

BUCK, J.

   This is an action brought to recover damages for personal injuries
sustained by, and resulting in the death of, one Roman Kranc, of
whose estate the plaintiff is the administrator; and, upon the rec-
ord and the arguments, we think that the only question presented
for our consideration and determination is this: Was the decedent
guilty of contributory negligence?

   At the time of his death there were located in the city of Min-
neapolis, between Holden street on the east and Western avenue
on the west, and running diagonally with, and going under, bridges
at said streets, eight railway tracks, running approximately east
and west; the distance between said streets being about 312 feet.
These several tracks are known by numbers, commencing at the
north and going south; running from Nos. 1 to 8, inclusive.    Nos.
1 to 5, inclusive, are main tracks, and are owned by the Great
Northern Railway Company.    Tracks Nos. 6 and 7 are owned by
the Minneapolis & St. Louis Railway Company.    Track No. 6 is a
main track, and tracks Nos. 7 and 8 are elevator tracks.    Track No.
6 is a main track, and track No. 7, while not a main track, is oc-
casionally used for switching purposes.    Track No. 8 is not a main
track.    Those denominated "main tracks" are generally used by
regular through trains.    The defendant, the St. Paul & Duluth
Railroad Company, frequently used tracks Nos. 6 and 7; and it
was the cars of this railroad, while running over track No. 6, that
caused the injuries to Kranc resulting in his death.    All of the
tracks were daily used a great deal.    The tracks were so situated
that, when ordinary sized cars were passing each other on adjoin-
ing tracks, they would be about 4½ feet apart.    Tracks Nos. 5 and
6 are 14 feet apart from center to center, and the distance between
the nearest rails is 9 feet.

At the time of the injury, about March 1, the decedent, Kranc, and two other sectionmen, together with their foreman, Czock, all in the employ of the Great Northern Railway Company, composing a section crew, whose duty it was to take care of the track of said Great Northern Railway Company, and look after the switch rods, and, when they froze up, pick out the ice, were engaged in said employment on track No. 5; and, while so working, a freight train of the defendant came from the east, on track No. 6, and passed by these men, not far from them, in full view, and stopped so that the rear end of the train was about 100 or 150 feet beyond them, but still in their full view, and the train then proceeded to back up on said track No. 6, towards the decedent. About the same time, or shortly after, an engine or train of the Great Northern Railway Company came in from the east on said track No. 5, where these men were working; and the foreman, Czock, seeing it approaching, notified the men, including the deceased, of the approach of said train, and told them to get off from track No. 5; and thereupon he and Kranc stepped off said track No. 5 to the south, in the direction of track No. 6, while the other two workmen stepped off the track to the north. At this time the train of the defendant company backed up on track No. 6, while the deceased stood either upon said track, or near it, on the north, and between it and track No. 5. The exact place does not quite satisfactorily appear, but it does appear that he was then looking east, towards the Great Northern engine, with his back to the westward, in the direction of the defendant's train thus backing towards where he was standing; and while in this position the caboose of defendant's train struck and knocked him down, and killed him.

On the south side of these tracks is a tower house, from which several pipes run under tracks Nos. 3 and 4, and angle off between tracks Nos. 5 and 6; and the pipes work the switches; and water gathers about the pipes, and under the planks, and freezes, and interferes with the working of the switches; and the workmen, of whom decedent was one, helped pick out the ice, and clean up and get the pipes loose and in working order. This was their duty as employees of the Great Northern Railway Company. And, when the sectionmen on the Minneapolis & St. Louis Railway Company

refused to clean their pipes, these workmen would do it, but to what extent this was done does not appear; but it does appear that, at the time of the accident, Kranc had just been working in picking the ice on track No. 5, and not on tracks Nos. 6 and 7.

It appears that the deceased had worked on this same section, which is only one mile in length, 11 months, and frequently at this particular place where he was when warned of the danger; that it was customary for the sectionmen to stand between the tracks when trains were passing, and that this could be done with safety; that it was not customary or necessary for the Great Northern sectionmen, of whom the deceased was one, to go over on the Minneapolis & St. Louis Railway tracks to get out of the way of the passing trains; that it was the daily practice of the St. Paul & Duluth train to come in twice a day on track No. 6, in the morning and afternoon, and go past and near the point where these men were working, and then back the cars by that point in order to get into the Minneapolis & St. Louis yard, as they were transporting cars from one yard to another. This train consisted of some nine freight cars and a caboose, and was running slowly,—about four or five miles per hour. The train of the Great Northern was also approaching slowly,—from two to six miles per hour,—and stopped before it reached the place where the men were working.

Now, when Kranc was struck by the caboose, knocked down, and killed, he was not engaged in any work that required his attention. He was entirely off track No. 5, where he had been working, and whereon the Great Northern engine was coming; so that from this source there was not the slightest danger to him, especially as it was moving slowly, and in fact stopped some distance before reaching the place where he had been working. The only thing the deceased had to do at the time of the accident was to look out for his own personal safety. He well knew of the daily custom of the defendant's train, in passing over track No. 6, coming from the east, after running a short distance west, to back up and run into the railroad yard east of where he was standing. Plaintiff's witness Czock, the section foreman, testified that there was no reason why Kranc could not have stood between tracks Nos. 5 and 6, and have been safe, and that it was customary for his men to stand between

the tracks and be safe when a train was passing on each track. Only a few minutes before the accident the defendant's train had passed within a few feet of the deceased, and had stopped with the rear end in full view from the point where he stood when struck by the caboose.

Whether the deceased, when struck, was standing between the rails of track No. 6, or just north of the north rail, is immaterial, as it must be conceded that he was standing in one place or the other; and, if in the latter, he was so near the north rail that it was a place of danger, and the result doubtless the same as though he was on the roadbed and between the rails of track No. 6. He must have known that he was in a place of danger, and there is no excuse for his standing there without exercising any care for his personal safety. A place of safety was close at hand. There was no sudden fright to daze or bewilder him, and he was there without license or authority or request of anybody. He knew that there was room and a place of safety between the passing cars, but he deliberately went beyond this place of safety, to a place of danger, and there appeared no excuse for so doing. Sad as the result is, it is but the penalty of his own contributory negligence, so apparent that it must be so construed as a matter of law upon the undisputed facts. Stacklie v. St. Paul & D. R. Co., 73 Minn. 37, 75 N. W. 734.

Judgment affirmed.