## CHARLES W. DYERSON v. THE UNION PACIFIC RAILROAD COMPANY.

No. 14,574. (87 Pac. 680.)

### SYLLABUS BY THE COURT.

1. RAILROADS—*Injury to Employee—Contributory Negligence.* The rule that a railroad employee who is engaged in the discharge of a duty the performance of which requires him to be on or near the track need not keep a strict watch for approaching trains, in order to be deemed to be exercising reasonable care for his own protection, does not apply to the case of an employee who is injured while attempting to cross a track merely for the purpose of getting from one point to another, the circumstances not requiring the crossing to be made at a particular time or place.

2. ——— *Duty to Look for Approaching Trains.* The fact that such an employee works close to a track and has frequent occasion to pass back and forth over it does not relieve him from the requirement that in order that he may be deemed to be in the exercise of ordinary diligence he must look in both directions for an approaching train before undertaking to cross it.

3. ——— *Change in Rule of Running Trains—Notice to Employee.* The fact that such an employee knows that it had previously been the rule and practice of the company to run trains along said track only in one direction, except under unusual circumstances, does not relieve him from such re-

Dyerson v. Railroad Co.

quirement, although a change has been made in such rule and practice without notice to him.

4. ———— *Concurrent Negligence—"Last Clear Chance."* A plaintiff who has received an injury occasioned by the negligence of the defendant, but who could have avoided it by the exercise of ordinary care on his own part, cannot recover damages therefor, although the defendant ought to have discovered (but did not in fact discover) his peril in time to have prevented the accident, where the plaintiff's negligence continued up to the very moment he was hurt, and where the exercise of reasonable diligence before that time would have warned him of his danger and enabled him to escape by his own effort.

Error from Wyandotte court of common pleas; WILLIAM G. HOLT, judge. Opinion filed November 10, 1906. Affirmed.

*E. L. Fischer, C. F. Hutchings,* and *S. D. Hutchings,* for plaintiff in error.

*Nelson H. Loomis, Robert W. Blair,* and *Henry A. Scandrett,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: Charles W. Dyerson was run into by an engine and tender of the Union Pacific Railroad Company and severely injured. He sued the company for damages, alleging that his injury was occasioned by the defendant's negligence. At the trial the court rendered judgment against him upon his petition and his preliminary statement to the jury. He prosecutes error.

The material facts disclosed by the plaintiff's pleading and statement may be thus summarized: He had for some time been employed by the company in its Kansas City yards. At the time of his injury he was known as a car-repairer, and one of his duties was to supply cars with ice. Ice for this use was kept in a box four feet high, four feet wide and eight feet long, placed parallel with a double track, four or five feet

34—74 KAN.

north of the northernmost rail. Between the box and the track were three steps, each eight inches high, the edge of the lowest being about two feet from the rail. For a long time the custom had been to use the north track only for west-moving trains or locomotives, except when the south track, which was used by those going east, was obstructed. This custom was in accordance with a rule, of the existence of which the plaintiff knew by having some time before, while he was a car-inspector, seen in a switch shanty a bulletin in which it was incorporated. A short time before the injury complained of the rule and practice in this respect had been reversed, but the plaintiff was not notified of the change and had no knowledge of it.

On the day of the accident, at about eleven o'clock in the morning, he was told to get ready to ice a tourist car which would be in shortly. He went to the east end of the ice-box, where there was a rack for the purpose, and crushed a quantity of ice, with which he filled a bucket, placing it in or near the box. He then walked to a point a little west of the box and waited for the car to arrive. While standing there his foreman beckoned him from a place south of the tracks and east of where he stood, and pointed to the car which was to be iced. He walked between the ice-box and the track to get his bucket of ice, reached it, took hold of it and started to carry it to the car, and while on the lowest step and about to proceed across the track he was struck by the tender of a locomotive which was backing east on the north track at the rate of fifteen or twenty miles an hour, without a signal of its approach being given and without a lookout along the track being kept. The track was straight for a quarter of a mile west. It was a clear day, and there was nothing to have prevented the plaintiff from seeing the engine and tender if he had looked. It is therefore manifest that the plaintiff's omission to exercise due caution in his own behalf was fatal to his recovery, unless there was something in the peculiar circumstances of the case to take

Dyerson v. Railroad Co.

it out of the general rule, which is thus stated in volume 23 of the American and English Encyclopædia of Law:

"Any one who goes upon or near a railroad-track is bound, at his peril, to make diligent use of his senses of sight and hearing in order to detect the approach of trains; and if, in disregard of this duty to his own safety, he steps upon the track without looking or listening, . . . he is guilty of such negligence as to bar an action for the injury." (Page 765.)

One of the exceptions of the rule is stated by the same authority in these terms:

"Nor does the principle apply to employees whose duties require their presence upon the track, the performance of which duties necessarily precludes their paying the strictest attention to the approach of trains." (Page 768.)

It is argued that the plaintiff in error falls within this exception. If he had been injured while standing upon the steps and engaged in breaking ice this might be true, for the performance of that duty might have rendered it impracticable for him to keep a strict watch for passing trains, and if while so engaged any part of his body could come within the overhang of the cars or locomotives the place was not a safe one to work in. But such was not the case. Whatever danger he might have been subjected to while filling his bucket with ice had passed. He had moved to a place of entire safety west of the ice-box and was awaiting an order to carry the ice to a car. When the order came he had no duty for the time being but to get the bucket and carry it across the track to where the car stood. However great a degree of promptness or haste might have been expected of him, it was not essential that he should cross the track at any particular point, nor could his delaying until the engine and tender had passed have been material. He was simply in the position of one having occasion to get from one side of the track to the other. The necessity of his picking up the bucket

before crossing did not preclude his glancing up the track to see if it was clear. The mere fact that he had habitually worked near the track and was under the frequent necessity of crossing it did not justify any relaxation of vigilance on his part. The tendency of the authorities seems rather to be to regard such circumstances as calling for the exercise of a higher degree of diligence than is expected of a pedestrian who is not an employee. In *The Wabash Railroad Co. v. Skiles,* 64 Ohio St. 458, 60 N. E. 576, it was said:

"It has been laid down as the law that passengers who are required to cross railroad-tracks in getting upon or alighting from trains have the right, from the nature of their contract, to expect a safe place for that purpose and may govern themselves accordingly; but such immunity has never been conceded to travelers upon a railroad-crossing having equal rights there with the railroad company, and still less to employees in the yards or depots of the company. The latter have no invitation or implied contract, as passengers do have, to perform their duties in a safe place. The very nature of employment about the tracks of a railroad involves notice of the danger of it, and nobody knows better than an employee that other employees are liable to be careless in the observance of rules and lax in the performance of duty. Therefore he cannot be permitted to shut his eyes to obvious dangers, and to act with 'full reliance' that rules will be observed, and a safe passage kept for him whenever his duties call upon him to cross the tracks. He cannot be excused from the rule that ordinary prudence requires that a person in the full enjoyment of the faculties of seeing and hearing should use them when about to pass over a railroad-track, and that the omission to do so is contributory negligence when it immediately results in an injury which might have been avoided if the injured person had looked or listened." (Page 471.)

Among other cases bearing more or less directly upon this proposition may be cited: *Grand Trunk Ry. Co. v. Baird,* 94 Fed. 946, 36 C. C. A. 574; *Loring v. K. C. Ft. S. & M. R'y Co.,* 128 Mo. 349, 31 S. W. 6; *Elliot v. Chicago, M. & St. P. Ry. Co.,* 5 Dak. 523, 41 N. W.

758, 3 L. R. A. 363; *Elliot v. Chicago, Milwaukee &c. Railway,* 150 U. S. 245, 14 Sup. Ct. 85, 37 L. Ed. 1068; *Abbot and another v. McCadden,* 81 Wis. 563, 51 N. W. 1079, 29 Am. St. Rep. 910; *Carlson v. Cincinnati, etc., R. Co.,* 120 Mich. 481, 79 N. W. 688; *St. Jean v. Boston & Maine Railroad,* 170 Mass. 213, 48 N. E. 1088; *Roskoyek v. St. Paul & Duluth R. Co.,* 76 Minn. 28, 78 N. W. 872; *Chicago, B. & Q. R. Co. v. Yost,* 56 Neb. 439, 76 N. W. 901.

It is claimed that negligence cannot be imputed to the plaintiff for his failure to look along the track to the west because, having had no notice of any change, he had a right to suppose that the old rule of using it under ordinary circumstances only for west-bound trains was still in force and would be observed. This consideration, however, did not relieve him from the burden of watchfulness on his own part. It is doubtful whether there was an obligation on the part of the company to give notice to the plaintiff of such a change. The information he had regarding the former rule was shown to have been acquired incidentally, and not to have been officially communicated to him as an employee. Of a somewhat similar question it was said in *L. S. & M. S. R. R. Co. v. Hart,* 87 Ill. 529:

"In excuse for not using any precaution to ascertain whether there was any train approaching from the *north,* appellee urges the practice of the roads to run all trains south, from Chicago, on the Rock Island track, and all trains north, toward Chicago, on the Lake Shore track; and that, therefore, in going upon the Lake Shore track, he was only bound to look *south* to see if any train was coming from that direction. Appellee was not justified in relying upon any such practice, as the result showed. The companies had the right to change such practice at any time, and to run their trains at all times in either direction, and any dependence upon such former practice was at appellee's risk. This practice before did not excuse the exercise of caution and vigilance in looking for approaching trains in *both* directions." (Page 534.)

But if it was negligence to reverse the method of

using the tracks without giving notice the situation was no different from that presented by the company's sending an engine down the track in disregard of any existing rule, whether relating to direction, or speed, or lookout, or signal of warning, or of any precaution which a due regard for the safety of those about the yards might demand irrespective of formal regulations. If one about to cross a railroad-track could rely implicitly upon the company's employees performing their full duty, and if such reliance would excuse the use of precaution for one's own protection, then there could be no room whatever for the application of the doctrine of contributory negligence. It is only when it has been established that the company has been negligent—that is, that some agent has omitted to do something which he should have done and which in a sense every one has a right to expect him to perform—that any occasion arises to consider whether a person injured has himself been at fault.

Finally it is contended in behalf of the plaintiff that, even admitting his own want of care to have been such as would ordinarily bar a recovery, still he had a right to submit to the jury the question whether the employees in charge of the engine by the use of reasonable diligence could have discovered his negligence in time to avert the accident, and that an affirmative answer would have entitled him to a verdict. There is a general agreement in the authorities that where an engineer actually sees a person in a position of danger, and then fails to do what he reasonably can to prevent an accident, the railroad company is responsible for the resulting injury, irrespective of the question of contributory negligence. A logical and sufficient reason for this holding is that such conduct on the part of the company's agent amounts to recklessness or wantonness, and is analogous to a wilful and intentional wrong, and like a wrong of that character establishes a cause of action to which negligence of the injured party is no defense. This reason is not always

given in decisions upon the point, perhaps not even generally, but it sometimes is. For example, in *Labarge v. Pere Marquette R. Co.,* 134 Mich. 139, 95 N. W. 1073, it was thus expressed:

"Where one wilfully injures another, the doctrine of contributory negligence is not involved, because the injury is not *negligent,* but *intentional.* Again, where one is seen in danger, though placed there through his own negligence, one who, thus seeing him, omits ordinary care to avert an injury to him, is not alone negligent, but is *wanton,* and, as wantonness of this kind is akin to wilfulness, there is an opportunity for applying the same rule." (Page 141.)

In a number of cases it has been held that if the engineer by the exercise of reasonable diligence could have learned that danger was imminent but did not do so the liability of the company will be determined in all respects as though he had in fact become aware of it, the constructive knowledge being apparently deemed the equivalent of actual knowledge. It is difficult or impossible to reconcile the decisions upon this and related questions, or to derive from them any generally accepted statement either of principle or result. Many of them are collected and discussed in chapter 9 of volume 1 of Thompson's Commentaries on the Law of Negligence, especially in sections 222 to 247.

There seems, however, to be no sufficient reason why the mere fact that a defendant is negligent in failing to discover a plaintiff's negligence, or his danger, should in and of itself exclude all consideration of contributory negligence. Take the not unusual situation of a train being negligently operated, let us say by being run at too high a speed and without proper signals of warning being given. Now, any one injured as a result of such negligence has *prima facie* a right to recover. But, if his own negligence has contributed to his injury, then ordinarily his right is barred. How is the situation altered if the railroad employees add to their negligence in regard to speed and signals the negligence of failing to keep a sufficient lookout? The

negligence is of the same sort; and, if the contributory negligence of the person injured prevents a recovery when but the two elements of negligence are present, consistency requires that it should have the same effect although a third element is added. If in the present case the plaintiff was entitled to recover in spite of his own negligence it must be because the order of its occurrence with respect to that of the defendant made the latter the proximate cause of the injury.) This indeed is his contention, and to support it reliance is placed upon the following text, which was quoted with approval in *Railway Co. v. Arnold,* 67 Kan. 260, 72 Pac. 857, and the substance of which is to be found also in volume 20 of the American and English Encyclopædia of Law, at page 137:

"And upon the principle that one will be charged with notice of that which by ordinary care he might have known, it is held that if either party to an action involving the questions of negligence and contributory negligence should, by the exercise of ordinary care, have discovered the negligence of the other, after its occurrence, in time to foresee and avoid its consequences, then such party is held to have notice; and his negligence in not discovering the negligence of the other, under such circumstances, is held the sole proximate cause of a following injury. (7 A. & E. Encycl. of L. 387.)"

This may be accepted as a correct statement of a principle of universal application, according with both reason and authority, provided the words "after its occurrence" be interpreted to mean after the person concerned had ceased to be negligent. The rule that under the circumstances stated the neglect of one party to discover the omission of the other is to be held to be the sole proximate cause of a resulting injury is not an arbitrary but a reasonable one. The test is, What wrongful conduct occasioning an injury was in operation at the very moment it occurred or became inevitable? If just before that climax only one party had the power to prevent the catastrophe, and he neglected

Dyerson v. Railroad Co.

to use it, the legal responsibility.is his alone. If, however, each had such power, and each neglected to use it, then their negligence was concurrent and neither can recover against the other.' As is said in the paragraph from which the foregoing quotation is made, "it is only when the negligence of one party is subsequent to that of the other that the rule can be invoked." In a note printed in volume 2 of the supplement to the American and English Encyclopædia of Law, at page 64, many recent cases are cited bearing on the subject, and it is said:

"This so-called exception to the rule of contributory negligence (*i. e.*, the doctrine of 'the last clear chance') will not be extended to cases where the plaintiff's own negligence extended up to and actually contributed to the injury. To warrant its application there must have been some new breach of duty on the part of the defendant subsequent to the plaintiff's negligence."

(In the present case it may be granted that the negligence of the plaintiff began when he walked between the track and the ice-box on the way to get the bucket, and that the employees in charge of the engine were themselves negligent in not discovering this negligence on his part and the peril to which it exposed him and taking steps to protect him. But his negligence as well as theirs continued up to the moment of the accident, or until it could not possibly be averted. His opportunity to discover and avoid the danger was at least as good as theirs. His want of care existing as late as theirs was a concurring cause of his injury, and bars his recovery. This determination is entirely consistent with what Mr. Thompson in his work above cited has styled the "last clear chance" doctrine, as is obvious from a consideration of the terms in which it is stated. As originally announced it was thus phrased:

"The party who has the last opportunity of avoiding accident is not excused by the negligence of any one else. His negligence, and not that of the one first in

fault, is the sole proximate cause of the injury." (1 Shear. & Red. Law of Neg., 5th ed., § 99.)

Mr. Thompson rewords it as follows:

"Where both parties are negligent, the one that had the last clear opportunity to avoid the accident, notwithstanding the negligence of the other, is solely responsible for it—his negligence being deemed the direct and proximate cause of it." (1 Thomp. Com. Law Neg. § 240.)

Expressions are to be found in the reports seemingly at variance with the conclusion here reached, but for the most part the decisions holding a defendant liable for failure to discover and act upon the plaintiff's negligence were made in cases which were in fact like *Railway Co. v. Arnold,* 67 Kan. 260, 72 Pac. 857, or were decided upon the theory that they fell within the same rule. There the plaintiff's decedent while riding a bicycle was through his own fault run into by a street-car; he clung to the fender, was carried some seventy-five feet, then fell under the wheels and was killed. A judgment against the street-car company was upheld only upon the theory that after he had reached a position of danger from which he could not extricate himself—that is, after his negligence had ceased—the defendant's employees were negligent in failing to discover his peril and stop the car.

In *Robinson v. Cone,* 22 Vt. 213, 54 Am. Dec. 67, the writer of the opinion said:

"I should hesitate to say that if it appeared that the want of ordinary care on the part of the plaintiff, *at the very time of the injury,* contributed either to produce or to enhance the injury, he could recover; because it seems to me that is equivalent to saying that the plaintiff, by the exercise of ordinary care at the time, could have escaped the injury." (Page 223.)

The principle thus intimated was embodied in a decision in *French v. The Grand Trunk Railway Co.,* 76 Vt. 441, 58 Atl. 722, where it was said:

"It is true that when a traveler has reached a point

where he cannot help himself, cannot extricate himself, and vigilance on his part will not avert the injury, his negligence in reaching that position becomes the condition and not the proximate cause of the injury, and will not preclude a recovery; but it is equally true that if a traveler, when he reaches the point of collision, is in a situation to help himself, and by a vigilant use of his eyes, ears and physical strength to extricate himself and avoid injury, his negligence at that point will prevent a recovery, notwithstanding the fact that the trainmen could have stopped the train in season to have avoided injuring him. In such a case the negligence of the plaintiff is concurrent with the negligence of the defendant, and the negligence of each is operative at the time of the accident. When negligence is concurrent and operative at the time of the collision, and contributes to it, there can be no recovery." (Page 447.)

To the same effect are these extracts:

"There is no testimony suggesting negligence on the part of the driver that does not convict Doyle of an equal or greater degree of negligence. One had no better opportunity to anticipate the accident nor any better means of preventing it than the other. If, therefore, there was negligence, it was concurring negligence, continuous and mutual up to the instant of the accident, which disentitles the plaintiff to recover." (*Consumers' Brewing Co. v. Doyle*, 102 Va. 399, 403, 46 S. E. 391.)

"In numerous cases it has been held that the plaintiff's conduct is not contributory negligence if, notwithstanding his negligence, the injury could have been avoided by the use of ordinary care by the defendant. That rule prevails when the plaintiff is in a position of threatened contact with some agency under the control of the defendant, when the plaintiff cannot, and the defendant can, prevent the injury. It does not apply where both parties are contemporaneously and actively in fault, and by their mutual carelessness an injury ensues to one or both of them. . . . The rule does not apply where, as in the case before us, the negligence of the party injured continues up to the moment of the injury, and was a contributing cause thereof." (*Robards v. Indianapolis St. R. Co.*, 32 Ind. App. 297, 302, 66 N. E. 66, 67 N. E. 953.)

"The plaintiff must show that, at some point of time, in view of the entire situation, including the plaintiff's negligence, the defendant was thereafter culpably negligent, and its negligence the latest in the succession of causes. In such case the plaintiff's negligence would not be the proximate cause of the injury. . . . The plaintiff not only negligently put himself in a place of peril, but continued negligently to move on to the catastrophe until it happened. The language of the doctrine of prior and subsequent negligence implies that the principle is not applicable when the negligence of the plaintiff and that of the defendant are practically simultaneous." (*Butler v. Railway,* 99 Me. 149, 159, 160, 58 Atl. 775, 105 Am. St. Rep. 267.)

In *Green v. Los Angeles etc. Ry. Co.,* 143 Cal. 31, 76 Pac. 719, 101 Am. St. Rep. 68, it was said of the rule holding the defendant liable notwithstanding the contributory negligence of plaintiff :

"It applies in cases where the defendant, knowing of plaintiff's danger, and that it is obvious that he cannot extricate himself from it, fails to do something which it is in his power to do to avoid the injury. It has no application, however, to a case where both parties are guilty of concurrent acts of negligence, each of which, *at the very time when the accident occurs,* contributes to it." (Page 41.)

Of the same rule it was said in *O'Brien v. McGlinchy,* 68 Me. 552 :

"This rule applies usually in cases where the plaintiff or his property is in position of danger from a threatened contact with some agency under the control of the defendant when the plaintiff cannot and the defendant can prevent an injury. . . . But this principle would not govern where both parties are contemporaneously and actively in fault, and by their mutual carelessness an injury ensues to one or both of them." (Pages 557, 558.)

In *Smith v. Railroad,* 114 N. C. 728, 19 S. E. 863, 25 L. R. A. 287, the general rule was thus concretely stated :

"Applying the rule which we have stated to accidents upon railroad-tracks, it may be illustrated as follows:

Dyerson v. Railroad Co.

First, there must be a duty imposed upon the engineer, as otherwise there can be no negligence to which the negligence of the injured party is to contribute. The duty under consideration is to keep a vigilant lookout . . . in order to discover and avoid injury to persons who may be on the track and who are apparently in unconscious or helpless peril. When such a person is on the track and the engineer fails to discover him in time to avoid a collision, when he could have done so by the exercise of ordinary care, the engineer is guilty of negligence. The decisive negligence of the engineer is when he has reached that point when no effort on his part can avert the collision. Hence, if A, being on the track and after this decisive negligence, fails to look and listen and is in consequence run over and injured, his negligence is not concurrent merely but really subsequent to that of the engineer, and he cannot recover, as he and not the engineer has 'the last clear opportunity of avoiding the accident.' If, however, A is on the track . . . and while there, and before the decisive negligence of the engineer, he by his own negligence becomes so entangled in the rails that he cannot extricate himself in time to avoid the collision, and his helpless condition could have been discovered had the engineer exercised ordinary care, then the negligence of A would be previous to that of the engineer, and the engineer's negligence would be the proximate cause, he, and not A, having the last clear opportunity of avoiding the injury. The same result would follow in the case of a wagon negligently stalled, when no effort of the owner could remove it, and there are other cases to which the principle is applicable." (Pages 755, 756.)

The principle running through these cases is reasonable and is consistent with the general rules that have met with practically universal acceptance. Applied to the facts of this case it requires an affirmance of the judgment.

All the Justices concurring.